1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534  (fax)
5  shawnw@rgrdlaw.com
          – and –
6  SAMUEL H. RUDMAN
   MARK S. REICH
7  LAUREN E. KARALIS
   58 South Service Road, Suite 200
8  Melville, NY  11747
   Telephone:  631/367-7100
9  631/367-1173  (fax)
   srudman@rgrdlaw.com
10 mreich@rgrdlaw.com
   lkaralis@rgrdlaw.com
11
   Attorneys for Plaintiff
12
                    UNITED STATES DISTRICT COURT
13
                    NORTHERN DISTRICT OF CALIFORNIA
14
                         SAN JOSE DIVISION
15

16  DAVID YASTRAB, Individually and on        )  Case No. 5:14-cv-01974-EJD
    Behalf of All Others Similarly Situated,   )
17                                             )  CLASS ACTION
                              Plaintiff,        )
18                                             )  MEMORANDUM OF LAW IN
         vs.                                   )  OPPOSITION TO DEFENDANT APPLE
19                                             )  INC.'S MOTION TO DISMISS
    APPLE INC.,                                )  PLAINTIFF'S CLASS ACTION
20                                             )  COMPLAINT
                              Defendant.        )
21  _____   )
                                                  Hon. Edward J. Davila
22
                                                  Date: September 19, 2014
23                                                Time: 9:00 a.m.
                                                  Courtroom 4
24
                                                  Complaint Filed: April 29, 2014
25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................1

II.    STATEMENT OF FACTS ...................................................................3

     A.     Apple's Broad-Based Marketing of iPhones ...........................................3

     B.     The iPhones' Update to Newer iOS Platforms ......................................4

     C.     iPhones' Wi-Fi Dependency ...........................................................4

     D.     The iOS 7 Update.......................................................................5

     E.     Plaintiff Experiences the Grayed Out Issue .........................................6

     F.     iPhone Users' Devices Deteriorate as a Result of iOS Updates ...........................7

III.   ARGUMENT ................................................................................8

     A.     Legal Standard ..........................................................................8

         1.     The Complaint Satisfies Rule 9(b)'s Particularity Requirement ................9

     B.     The Complaint Adequately Alleges Actionable Misrepresentations and Reliance.......................................................................................10

     C.     The Complaint Adequately Alleges a Claim Under the CLRA.............................14

         1.     CLRA Standard...................................................................14

         2.     Defendant's Challenges to the Complaint's CLRA Allegations Lack Merit.......................................................................15

     D.     The Complaint Adequately Alleges a Claim Under the UCL ...........................16

         1.     Defendant's Conduct Was Unlawful ...........................................17

         2.     Defendant's Conduct Was Unfair ..............................................17

         3.     Defendant's Conduct Was Fraudulent .........................................18

     E.     The Complaint Adequately Alleges a Claim for Negligent Misrepresentation.......................................................................18

     F.     The Complaint Adequately Alleges a Breach of an Express Warranty.................20

     G.     Leave to Amend .......................................................................23

IV.   CONCLUSION..............................................................................23

# TABLE OF AUTHORITIES

Page

## CASES

*Aaronson v. Vital Pharm., Inc.*,
  No. 09-CV-1333W (CAB), 2010 U.S. Dist. LEXIS 14160
  (S.D. Cal. Feb. 17, 2010) .......................................................................................20, 21

*Allen v. Similasan AG*,
  Case No. 12cv0376-BTM-WMC, 2013 U.S. Dist. LEXIS 69369
  (S.D. Cal. May 14, 2013).............................................................................................20

*Anguilar v. Boulder Brands*,
  No. 12cv01862 BTM (BGS), 2013 U.S. Dist. LEXIS 81378
  (S.D. Cal. June 10, 2013)........................................................................................16, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................8

*Aventis Techs. Corp. v. JP Morgan Chase Bank*,
  No. CIV -03-1624 JWS, 2004 U.S. Dist. LEXIS 8302
  (D. Ariz. Jan. 26, 2004)................................................................................................19

*Baltazar v. Apple Inc.*,
  No. Cv-10-3231, 2011 U.S. Dist. LEXIS 13187
  (N.D. Cal. Feb. 10, 2011)........................................................................................12, 13

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (Cal. App. 2006) ...................................................................17

*Barrier Specialty Roofing & Coating, Inc. v. ICI Paints N. Am. Inc.*,
  No. CV F 07-1614 LJO TAG, 2008 U.S. Dist. LEXIS 120604
  (E.D. Cal. July 11, 2008) .............................................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007).......................................................................................................8

*Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal. 4th 163 (Cal. 1999).........................................................................................17

*Chamberlan v. Ford Motor Co.*,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005) ......................................................................14

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.*,
  173 F.3d 725 (9th Cir. 1999) ..................................................................................12, 14

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT - 5:14-cv-01974-EJD

- ii

**Page**

*Colony Cove Props., LLC v. City of Carson*,
  640 F.3d 948 (9th Cir. 2011),
  *cert. denied*, _ U.S. _, 132 S. Ct. 456 (2011) ...........................................................................8

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ...............................................................................................9

*Dodson v. Tempur-Sealy Int'l, Inc.*,
  No. 13-cv-04984-JST, 2014 U.S. Dist. LEXIS 54071
  (N.D. Cal. Apr. 16, 2014) ...................................................................................................10

*Dreamstone Entmn't v. Maysalward Inc.*,
  No. 2:14-cv-02063-CAS, 2014 U.S. Dist. LEXIS 81084
  (C.D. Cal. June 11, 2014) .....................................................................................................9

*First Class Vending, Inc. v. ITC Sys.*,
  No. CV 12-2342-ODW, 2012 U.S. Dist. LEXIS 139720
  (C.D. Cal. June 26, 2012) ...................................................................................................19

*Frye v. The Wine Library, Inc.*,
  No. 06-5399 SC, 2006 U.S. Dist. LEXIS 96075
  (N.D. Cal. Dec. 4, 2006) .....................................................................................................19

*Graves v. Sw. & Pac. Sepcialty Fin., Inc.*,
  No. C 13-1159, 2013 U.S. Dist. LEXIS 158512
  (N.D. Cal. Nov. 4, 2013)......................................................................................................23

*Grodzitsky v. Am. Honda Co.*,
  No. 2:12-cv- 1142 SVW-PLA, 2013 U.S. Dist. LEXIS 33387
  (C. D. Cal. Feb. 19, 2013)....................................................................................................16

*Herrington v. Johnson & Johnson Consumer Cos. Inc.*,
  No. C 09-1597 CW, 2010 U.S. Dist. LEXIS 90505
  (N.D. Cal. Sept. 1, 2010) .....................................................................................................13

*Herron v. Best Buy Stores, LLP.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2014).................................................................................9

*Horvath v. LG Electronics Mobilecom U.S.A., Inc.*,
  No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215
  (S.D. Cal. Feb. 13, 2012) .....................................................................................................22

*In re HP Inkjet Printer Litig.*,
  No. C 05-3580 JF, 2006 U.S. Dist. LEXIS 12848
  (N.D. Cal. Mar. 7, 2006)......................................................................................................18

1
2                                                                                    **Page**
3
*In re iPhone 4s Consumer Litigation*,
4     No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058
5     (N.D. Cal. July 23, 2013) ...................................................................................13, 16

6   *In re iPhone Application Litig.*,
7     844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...........................................................16

    *In re Sony VAIO Computer Notebook Trackpad Litig*,
8     No. 09cv2109 BEN (RBB), 2010 U.S. Dist. LEXIS 115142
9     (S.D. Cal. Oct. 28, 2010) ......................................................................................22

    *JMP Securities LLP v. Altair Nanotechnologies Inc.*,
10    880 F. Supp. 2d 1029 (N.D. Cal. 2012) ...........................................................20

11  *Keilholtz v. Superior Fireplace Co.*,
12    No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 30732
      (N.D. Cal. Mar. 30, 2009) .....................................................................................14
13
    *Maxwell v. Unilever United States Inc.*,
14    No. 5:12-CV-01736-EJD, 2013 U.S. Dist. LEXIS 51195
15    (N.D. Cal. Apr. 9, 2013), Def. Mem. at 4 ..................................................12, 13

16  *McVicar v. Goodman Global, Inc.*,
      No. SACV 13-1223-DOC, 2014 U.S. Dist. LEXIS 26332
17    (C.D. Cal. Feb. 25, 2014) ................................................................................17, 18

18  *Morgan v. AT&T Wireless Servs. Inc.*,
19    177 Cal. App. 4th 1235 (Cal. App. 2009) ....................................................11, 17

20  *Morgan v. Wallaby Yogurt Co., Inc.*,
      No. 13-cv-00296, 2014 U.S. Dist. LEXIS 34548
21    (N.D. Cal. Mar. 13, 2014) ................................................................................12, 18

22  *Neubronner v. Milken*,
      6 F.3d 666 (9th Cir. 1993) ......................................................................................9
23
    *Oracle USA, Inc. v. XL Global Services Inc.*,
24    No. C 09-0537 MHP, 2009 U.S. Dist. LEXIS 59999
25    (N.D. Cal. July 13, 2009) ......................................................................................20

26  *Oreck Corp Halo Vacuum & Air Purifiers Mktg. and Sales Practices Litig.*,
      No. ML 12-2317 CAS (JEMx)., 2012 U.S. Dist. LEXIS 172869
27    (C.D. Cal. Dec. 3, 2012) .........................................................................................11
28

**Page**

*Progressive W. Ins. Co. v. Superior Court,*
   135 Cal. App. 4th 263 (Cal. App. 2005 ) .............................................................17

*Rossi v. Whirlpool Corp.,*
   No. 12-cv-125-JAM-JFM, 2013 U.S. Dist. LEXIS 46167
   (E.D. Cal. Mar. 28, 2013), Def. Mem. at 13 .......................................................21

*Shin v. BMW of N. Am.,*
   No. CV 09-00398 AHM, 2009 U.S. Dist. LEXIS 67994
   (C.D. Cal. July 16, 2009) ...............................................................................14, 18

*Solid 21, Inc. v. Breitling USA, Inc.,*
   512 Fed. Appx. 685 (9th Cir. Mar. 7, 2013) ......................................................8, 9

*Tait v. BSH Home Appliance Corp.,*
   SACV 10-00711 DOC (ANx), No. 2011 U.S. Dist. LEXIS 103584
   (C.D. Cal. Aug. 31, 2011) .................................................................................23

*Tasion Commc'ns Inc. v. Unbiquiti Networks, Inc.,*
   No. C-13-1803 EMC, 2014 U.S. Dist. LEXIS 88055
   (N.D. Cal. June 26, 2014) .............................................................................22, 23

*Ticketmaster LLC v. RMG Tech.,*
   No. CV07-2534 ABC, 2007 U.S. Dist. LEXIS 81573
   (C.D. Cal. Oct. 12, 2007) ................................................................................11

*Villalobos v. CarMax Auto Superstore Cal., LLC,*
   No. 12-cv-26226-W (KSC), 2014 U.S. Dist. LEXIS 54375
   (S.D. Cal. Apr. 17, 2014) ................................................................................14

*Wehlage v. EmPres Healthcare, Inc.,*
   791 F. Supp. 2d 774 (N.D. Cal. 2011) ................................................................13

*Weinstat v. Dentsply Internat., Inc.,*
   180 Cal. App.4th 1213 (Cal. App. 2010) ............................................................22

**STATUTES, RULES AND REGULATIONS**

Cal. Civ. Code
   §1761(a) ...............................................................................................16
   §1770(a) ...............................................................................................14

**Page**

Cal. Com. Code
    §2313(a) ...................................................................................................20
    §2313(b) ...................................................................................................21
    §2313(c)(2) ...............................................................................................21

Consumers Legal Remedies Act, California Civil Code §§1750, *et seq* ............................. *passim*

Unfair Competition Law, Business and Professions Code §§17200, *et seq.* ......................16, 17, 18

Federal Rules of Civil Procedure
    Rule 8(a) .....................................................................................................9
    Rule 8(a)(2) ................................................................................................8
    Rule 9(b) ............................................................................................. *passim*
    Rule 12(b)(6) ...........................................................................................8, 9
    Rule 15(a)(2) ..............................................................................................23

**SECONDARY AUTHORITIES**

http://www.cnet.com/ news/ios-6-holdouts-complain-about-large-unwanted-ios-7-download/
    (last visited August 13, 2014) ...............................................................................6

www.change.org ..................................................................................................7

Plaintiff David Yastrab ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendant Apple Inc.'s ("Apple" or "Defendant") Motion to Dismiss Plaintiff's Class Action Complaint (the "Complaint").

## I.     PRELIMINARY STATEMENT

Apple falsely and misleadingly represented to its consumers that its iPhones[1] were smartphone devices that were fully equipped with Wi-Fi and Bluetooth capabilities, which would continue to function with Apple's expected and routine operating system updates (iOS updates). Plaintiff's iPhone, as well as the iPhones of similarly situated consumers, lost Wi-Fi or Bluetooth functionality.  Apple, notwithstanding its awareness and acknowledgement of the well-known Grayed Out Issue (defined below), is unwilling to replace the defective iPhones and unwilling to allow Plaintiff to revert to a prior iOS version in an effort to allow him to remedy the defect.  These simple facts underpin Plaintiff's claim.

Wi-Fi and Bluetooth functionality are indispensable components of any iPhone model. These two functions are, in fact, essential to every smartphone.  That is why, not surprisingly, Apple's nationwide marketing of its iPhones focused on features that are dependent on Wi-Fi and Bluetooth capabilities, including Safari,[2] the App Store, the iTunes Library, the iBooks Store, Siri, FaceTime and iCloud.

Plaintiff purchased his iPhone with the understanding, based on Apple's representations, that he was acquiring a device that contained, and would maintain, Wi-Fi and Bluetooth capabilities.  As alleged in his Complaint, however, as a result of downloading the latest iOS,[3] the Wi-Fi and Bluetooth capabilities on Plaintiff's iPhone were disabled – or, as commonly referred to by iPhone users who experienced the same problem, the Wi-Fi and Bluetooth capabilities were "Grayed Out." Once Grayed Out, Plaintiff's Wi-Fi and Bluetooth functions could not be restored.

---

[1]     As set forth in the Complaint, "iPhones" refers collectively to Apple's iPhone 4, iPhone 4s and iPhone 5.

[2]     Apple's web browsing application.

[3]     Plaintiff downloaded iOS 7, which debuted on June 10, 2013.  iOS7 was a series of software updates that Apple claimed would give iPhone users the benefit of improved performance.

1        Plaintiff's Grayed Out Issue is far from being a limited defect or manufacturing anomaly.

2   After Apple rolled out the iOS 7 software update in June 2013, iPhone users began experiencing, and

3   complaining about, the reduced functionality of their iPhones.  The specific and common example of

4   the reduced functionality was that Wi-Fi and Bluetooth were disabled after the update was installed.

5   Apple refused to remedy the problem by either: (i) replacing consumers' iPhones; or (ii) allowing

6   consumers to revert the iOS software on their iPhones to a fully functioning predecessor version of

7   iOS.  After the purported "update," Plaintiff and other Class members were left with broken phones.

8   Without access to Wi-Fi or Bluetooth, Plaintiff and Class members were unable, for example, to use

9   Wi-Fi dependent features (*e.g.*, FaceTime or iCloud) and were forced to incur overage charges by

10   only being able to connect over their data-plans.  As such, Plaintiff and Class members were left

11   with no choice but to incur the expense of purchasing a new phone.

12        Unable or unwilling to refute the widespread existence of the Grayed Out Issue, Apple's

13   motion to dismiss shifts the focus of Plaintiff's claim from the problem with the iPhone devices to

14   Apple's own theory – that the singular source of the problem was the iOS software updates.[4]

15   Defendant challenges the Complaint based on, in particular, the notion that the actionable

16   misrepresentations at issue were made solely in connection with iOS 7.  To follow their self-created

17   theory of the case, Apple contends, for instance, that the Complaint's California Consumer Legal

18   Remedies Act ("CLRA") claim fails because, under the statute: (i) a free software download is a not

19   a "good or service"; (ii)  there was no "sale or lease" because iOS 7 was acquired "at no additional

20   cost"; and (iii) there was no misrepresentation "at or before the time of sale" of iOS 7.  As alleged in

21   the Complaint, however, and as explained in detail below, Plaintiff's claims begin with the

22   fraudulent misrepresentations that Apple made while advertising and marketing **the iPhones**

23   **themselves**.  This is not to suggest that Apple's representations and promises regarding iOS 7 were

24   true, but that is not the sole focus or basis of Plaintiff's claims.

25

---

26  [4]   It is remarkable that Apple does not (perhaps because it cannot) contest that consumers are

27  experiencing a reduction of functionality, including the well-known Grayed Out Issue, as a result of
iOS updates.  Without a factual defense, Apple is forced to resort to nuanced, legal defenses in the

28  hopes that it can circumvent Plaintiff's factually-accurate claims.

1    The balance of Defendant's arguments stem from the idea that Plaintiff's allegations lack the

2    level of particularity sought by Apple.  Throughout its motion, Defendant incorrectly weaves this

3    objection to broadly apply to all causes of action pled in the Complaint.  Notwithstanding that

4    Plaintiff is not required to plead all his stated causes of action with particularity under Federal Rule

5    of Civil Procedure 9(b), he has nevertheless done so.  Just by way of example, Plaintiff alleged that

6    he read Apple's marketing information and relied on its representations that his iPhone 4s was a

7    smartphone device with Wi-Fi and Bluetooth capabilities and that, but for those misrepresentations,

8    Plaintiff would not have purchased the iPhone 4s.  *See infra* Section III B.  These are the sort of

9    allegations that courts have held to be more than adequate to notify a defendant as to the nature of

10   the claims and to allow it to properly prepare its defense.  Rule 9(b)'s pleading requirements, despite

11   the question as to whether they apply, have been met.

12   For these reasons, and as explained more fully below, it is respectfully submitted that

13   Defendant's motion to dismiss be denied in its entirety.

14   **II.   STATEMENT OF FACTS**

15       **A.    Apple's Broad-Based Marketing of iPhones**

16   Apple is a California corporation which manufactures, designs, produces and sells several

17   types of electronic products including, *inter alia*, personal computers, portable music players,

18   cellular phones, and other communication devices.  ¶¶36, 37.[5]  The original iPhone debuted in 2007

19   ¶2.  Since then, Apple has released at least one new iPhone model every year: the iPhone 3G in

20   2008, the 3Gs in 2009, the 4 in 2010, the 4s in 2011, the 5 in 2012, and the iPhone 5c and 5s in 2013.

21   *Id.*  Apple's marketing of its iPhones were part of pervasive nationwide and global advertising

22   campaigns.  *See* Declaration of Reich in Support of Plaintiff's Opposition to Defendant's Motion to

23   Dismiss and Defendant's Motion to Strike ("Reich Decl."), filed concurrently herewith, ¶6.  In

24   particular, Apple consistently marketed the iPhones as smartphone devices with Wi-Fi and Bluetooth

25   features that were capable of running data rich applications.  *See* Reich Decl. ¶5(a), (b), (c), (i),

26   (j), (k).

27

28   [5]   "¶__" refers to paragraphs of the Complaint.

### B.   The iPhones' Update to Newer iOS Platforms

iPhones are equipped with an operating system that denotes its version with a numerical value following 'iOS' (*i.e.* iOS5, iOS6, iOS7, etc.).  ¶3.  iOS consists of a collection of software applications known as "apps" which enable users to utilize all of the features of Apple products.  *Id.* Three months after the original iPhone's debut, Apple released its first update, labeled iOS 1.1.1.  ¶4. iOS 1.1.1 provided users with additional features, including the iTunes Wi-Fi Music Store which allowed users to download music directly onto iPhones.  *Id.*  Apple has since released numerous iOS updates.  Each update ostensibly added new features, increased security, fixed software bugs and improved the battery life of the iPhone.  *Id.*

Apple's promotions and marketing of its iPhones consistently highlighted the iPhones' ability to stay up-to-date and download later generations of iOS.  *See* ¶20; *see also* Reich Decl. ¶6. According to Apple, "because iOS is engineered to take full advantage of the technologies built into Apple hardware, your devices are always years ahead – from day one to whenever."  ¶20.  Apple consistently portrayed iOS as an integral part of iPhones and particularly emphasized the necessity of having the most up-to-date iOS platform running Apple devices. Reich Decl. ¶¶2, 5.  The ability to update iOS platforms on iPhones was, therefore, advocated as both a draw for customers and part of the overall maintenance and upkeep of iPhones.  ¶21; Reich Decl. ¶¶2-3.  In all, based on Apple's advertising and users' prior experience with Apple products, consumers expected that compatible iOS updates would enhance their devices' functionality.  *See* Reich Decl. ¶5(d)-(h) and (l)-(s).

### C.   iPhones' Wi-Fi Dependency

On October 14, 2011, Apple launched the iPhone 4s, the fifth generation iPhone which came standard with iOS 5.0.  ¶¶8, 39.  The iPhone 4s came equipped with Bluetooth 4.0, a feature which enabled users to exchange data between other Bluetooth devices (*e.g.*, a wireless keyboard, mouse, printer, headset or speakers).  *Id.*

The iPhone 4s also added two heavily advertised features: Siri and iCloud.  ¶9.  Siri is a speech recognition software which was added to the iPhone to enable users to dictate verbal commands and tasks for the iPhone to complete.  *Id.*  Siri was available through a Wi-Fi or cellular network connection; however, when used over a cellular connection, it consumed huge amounts of

data from users' cellular phone plan and risked, or directly caused, overage charges.  ¶11.  The "iCloud" feature allowed users to save or backup data such as photos, videos, music, movies, apps, books, TV shows, device settings, ringtones and other settings or files.  ¶13.  Once data was backed up by iCloud, it could be accessed on any Apple device.  *Id.*  According to Apple, iCloud could only backup data when the iPhone was locked, connected to a power source and Wi-Fi was turned on and connected.  ¶14.  Users without Wi-Fi cannot not use iCloud because the feature is incompatible used on cellular connection alone.  *Id.*

**D.**      **The iOS 7 Update**

On June 10, 2013, Apple unveiled iOS 7, which Defendant lauded as "the most significant iOS update since the original iPhone."  ¶16.  iOS 7 changed the look of the iPhone's interface and purported to add several enhancements:  a new Control Center; new Notification Center; improved Multitasking; and enhanced versions of Photos, Safari, Siri and iTunes Radio.  *Id.*  Craig Federighi, Apple's Senior Vice President of Software Engineering, praised the update as "completely redesigned with an entirely new user interface and over 200 new features, so it's like getting a brand new device, but one that will still be instantly familiar to our users."  ¶41.  Apple's marketing touted the iOS 7 update as a much "simpler, more useful interface" that would "bring clarity to the entire experience."  ¶42.  According to Apple, the update was compatible with iPhone 4 and later models, along with other Apple products.  *Id.*  On September 17, 2013, iOS 7 was released and available for download.  ¶41.  It was advocated as both a draw for users and part of the overall maintenance and upkeep of iPhones.

Apple claims that iOS updates are presented as a choice for consumers.  In actuality though, they are not.  *First*, many core features were (and are) only available on the most updated iOS platform.  *Second*, certain iOS updates included patches that repaired problems and bugs with previous versions, including critical security vulnerabilities.  *Third*, Apple imposed the updates to the new iOS platform by forcing repeated pop-up messages to appear on iPhones.  *Fourth*, when

1    users continued to ignore Apple's persistent methods to induce users to download updates, Apple

2    resorted to actually forcing the updates onto users' devices without their permission.[6]

3          **E.**    **Plaintiff Experiences the Grayed Out Issue**

4          On or around April 30, 2012, Plaintiff consulted apple.com (the "Apple Website") and

5    viewed representations regarding the iPhone 4s.  ¶35; *see also* Declaration of David Yastrab in

6    Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Yastrab Decl."), filed

7    concurrently herewith, at ¶¶4-5.  The Apple Website represented that the iPhone 4s was a

8    smartphone which was fully equipped with Wi-Fi and Bluetooth capabilities.  ¶¶19, 35, 42; Yastrab

9    Decl. ¶¶4-5.  Further, the Apple Website advertised new features of the iPhone 4s, including iOS 5,

10   FaceTime and iCloud.  ¶¶19,35, 42; Yastrab Decl. ¶5(b), (c).  Apple's website described the iOS 5

11   software as follows: "iOS 5 Software update.  Your iPhone gets better with every iOS update.  To

12   get the free iOS software update, just connect your iPhone to your Mac or PC, open iTunes, and

13   follow the onscreen instructions." Yastrab Decl. ¶¶4-6.  On or around April 30, 2012, in reliance on

14   Apple's representations regarding the features of the iPhone, Plaintiff purchased an iPhone 4s

15   (16 GB version), Serial Number 990-00101148043.  ¶35; Yastrab Decl. ¶6.  After receiving his

16   iPhone 4s in the mail, Plaintiff inspected the packaging of the device which confirmed that the

17   iPhone 4s had Wi-Fi and Bluetooth.  *See* Yastrab Decl. ¶12.[7]

18         In or around October 2013, Plaintiff received a notification on his iPhone stating that the iOS

19   7 update was available for download.  ¶54; Yastrab Decl. at 7.  While connected to Wi-Fi, Plaintiff

20   downloaded the iOS 7 update.  *Id.*  After iOS 7 was downloaded and installed on Plaintiff's iPhone,

21   Wi-Fi and Bluetooth capabilities on his iPhone stopped working and became Grayed Out – *i.e.*, the

22

---

23   [6]   To make certain that all users downloaded the updated iOS software, Apple pushed out iOS 7
24   updates to devices automatically, without users' permission.  *See* http://www.cnet.com/ news/ios-6-holdouts-complain-about-large-unwanted-ios-7-download/ (last visited August 13, 2014).

25   [7]   Plaintiff maintains that the Complaint adequately pleads that he purchased the iPhone 4s based
26   on Apple's misrepresentations regarding the device's Wi-Fi and Bluetooth capabilities.  Should this Court call for more detail to sustain the element of reliance, Plaintiff has verified, in support of this
27   brief, the following supplemental statement: "On or before April 30, 2012, I visited apple.com (the "Apple Website") and viewed representations regarding the iPhone 4s.  The Apple Website
28   represented that the iPhone 4s was a smartphone; a smartphone that was equipped with Wi-Fi and Bluetooth capabilities." Yastrab Decl. ¶4.

1  option to turn Wi-Fi or Bluetooth on in the iPhone's settings turned gray and could not be operated

2  (the "Grayed Out Issue"). ¶¶24, 55; Yastrab Decl. ¶14. As a result of the Grayed Out Issue, Plaintiff

3  could not use the features or benefits of his iPhone associated with Wi-Fi or Bluetooth, including the

4  ability to run FaceTime or use iCloud. ¶48; Yastrab Decl. ¶14. Plaintiff searched Apple's support

5  websites in an effort to identify a remedy to the Grayed Out Issue. ¶¶67-68; Yastrab Decl. ¶15.

6  None worked. *Id.* Online forums and statements advised iPhone users who experienced the Grayed

7  Out Issue to contact Apple for service options. *Id.*

8      After Plaintiff visited two Apple stores for assistance, he was ultimately told, like other

9  iPhone users, that his only option was to purchase a new device. *Id.*; Yastrab Decl. ¶16. Plaintiff

10  requested that, in lieu of replacing the iPhone, he be given the opportunity or instructions to revert

11  his iPhone to the prior, fully functioning, iOS version in an effort to undo the Grayed Out Issue. *Id.*

12  Apple refused to allow Plaintiff to restore his iPhone to the prior iOS version or remove the iOS 7

13  update. *Id.*

14      **F.     iPhone Users' Devices Deteriorate as a Result of iOS Updates**

15      The Grayed Out Issue was unquestionably widespread. ¶¶56-61. A discussion thread on

16  Apple's support site entitled "wifi greyed out on iPhone 4s  with ios 7" reflected common

17  customers' problems with the iOS 7 download. ¶57. The message board included, *inter alia*, the

18  following comments: (i) "Wifi was working for almost a day but suddenly both wifi and bluetooth

19  has stopped at once"; (ii) "I've had the same problem to iOs7 (greyed out wifi etc). I've been on

20  Apple Chat for over 2 hours and they are not prepared to fix (as out of warranty) . . ."; and

21  (iii) "After I upgraded my iphone 4s to iOS7, the wifi and bluetooth worked for two days and

22  stopped working after that. My wifi is grayed out. I have tried all the tricks nothing is working for

23  me. I went to Apple store, the tech after running the diagnosis tells me he is not able to identify what

24  the issue is . . . how Sad! unfortunately, the phone is not under warranty." ¶57.

25      In addition to the comments on forums and discussion threads regarding the lack of any

26  solution to the Grayed Out Issue, ¶68, a petition on www.change.org was set up "[t]o get Apple to

27  replace all units affected negatively by the update ios7 or patch an update that will remedy the issues

28  many loyal customers are experiencing." ¶60. Comments that accompanied the petition included:

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT - 5:14-cv-01974-EJD        - 7 -

1   (i) "My iPhone is now virtually useless. WiFi no longer works and the GUI is horrible."; (ii) "iOS 7

2   screwed up my iPhone 4S's WiFi"; and (iii) "My iPhone 4S had WiFi no problem until i updated to

3   iOS 7.  So far I have had to blowdry my phone 15 times.  The problem is a software problem ad

4   Apple should own up to their mistake and release a patch update that would fix the issue."  *Id.*  Like

5   Plaintiff, many users sought to revert back to the previous version of iOS in order to restore their

6   Wi-Fi and Bluetooth capabilities.  ¶¶60-72.  Apple, however, refused to allow users to do so.  *Id.*

7        In addition to iPhone 4s users, iPhone 4 and iPhone 5 users also experienced the Grayed Out

8   Issue and other forms of deterioration in their devices' performance as a result of downloading

9   updated iOS software.  *See* Reich Decl. ¶7.  While users may have downloaded the new iOS at

10  different times and/or recognized that their Wi-Fi had ceased functioning on different days and/or

11  tried some or all of the suggested fixes or proposed remedies, the overarching fact that was (and is)

12  consistent among the iPhone users who had updated iOS:  their iPhones were struck by the Grayed

13  Out Issue.

14  **III.    ARGUMENT**

15       **A.    Legal Standard**

16       "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

17  to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

18  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)).[8]  To

19  survive a motion to dismiss for a failure to state a claim upon which relief can be granted pursuant to

20  Federal Rule of Civil Procedure 12(b)(6), a complaint need only set forth "a short and plain

21  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

22       In deciding a Rule 12(b)(6) motion to dismiss, a court will "accept[] factual allegations in the

23  complaint as true and construe[] the pleadings in the light most favorable to the nonmoving party."

24  *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011), *cert. denied,*

25  _ U.S. _, 132 S. Ct. 456 (2011); *see also Solid 21, Inc. v. Breitling USA, Inc.*, 512 Fed. Appx. 685,

26

27

28  [8]    Unless otherwise indicated, internal citations and quotations are omitted and emphasis is added.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT - 5:14-cv-01974-EJD          - 8 -

1   687 (9th Cir. Mar. 7, 2013) ("the inquiry under Rule 12(b)(6) is into the adequacy of the pleadings,

2   not the adequacy of the evidence").

3         With respect to pleadings containing "averments of fraud or mistake, the circumstances

4   constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint

5   satisfies the Rule 9(b) requirement where "it identifies the circumstances constituting fraud so that

6   the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d

7   666, 671-72 (9th Cir. 1993); *Dreamstone Entmn't v. Maysalward Inc.*, No. 2:14-cv-02063-CAS

8   (SSx), 2014 U.S. Dist. LEXIS 81084, at *8 (C.D. Cal. June 11, 2014).  Allegations pled under Rule

9   9(b) need only be "sufficient[ly] detail[ed] . . . to give us some assurance that [Plaintiff's] theory has

10  a basis in fact." *Herron v. Best Buy Stores, LLP.*, 924 F. Supp. 2d 1161, 1170 (E.D. Cal. 2014).

11  Rule 9(b) does not require a plaintiff to plead each and every detail regarding the alleged conduct.

12  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ("we cannot make Rule 9(b) carry more

13  weight than it was meant to bear"); *see also Dreamstone*, 2014 U.S. Dist. LEXIS 81084, at *9

14  (highlighting that  "while some cases hold that a plaintiff must identify 'who, what, when, where,

15  and how' of the alleged fraud, these cases do not articulate a rigid checklist").

16        **1.**      **The Complaint Satisfies Rule 9(b)'s Particularity Requirement**

17        The Complaint exceeds the standards set forth in Rule 8(a), as well as the more stringent

18  requirements of Rule 9(b).  The Complaint, for example, alleges that Apple misrepresented the

19  Wi-Fi and Bluetooth capabilities of iPhones in its nationwide marketing and advertising scheme.

20  ¶¶19, 35, 43. Apple's representations concerning Wi-Fi and Bluetooth were both explicit (*e.g.*,

21  technical specifications indicating that the iPhone had Wi-Fi and Bluetooth capabilities, ¶35; Yastrab

22  Decl. ¶5(a)) and implicit (*e.g.*, touting iPhones as smartphone devices, Yastrab Decl. ¶4).  In reality,

23  iPhone users would not be able to continuously use the Wi-Fi and Bluetooth functionality.  What is

24  worse, it was Apple that ultimately disabled Wi-Fi and Bluetooth capabilities from iPhones through

25  its own iOS updates.

26

27

28

### B. The Complaint Adequately Alleges Actionable Misrepresentations and Reliance

"A plaintiff satisfies her pleading burden under Rule 9(b) by alleging the 'who, what, where, when, and how' of the charged misconduct." *Dodson v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2014 U.S. Dist. LEXIS 54071, at *6 (N.D. Cal. Apr. 16, 2014). Plaintiff alleged *who* made the misrepresentations (Apple) (¶¶19, 35, 43; *see also* Yastrab Decl. ¶4), *what* misrepresentations were made (that the iPhone had Wi-Fi and Bluetooth capabilities) (¶¶19, 35, 43; *see also* Yastrab Decl. at ¶¶4, 5), *where* the misrepresentations were made (Apple's Website and product packaging and television commercials) (¶¶19, 35, 43; *see also* Yastrab Decl. ¶¶4, 5, 12; Reich Decl. ¶6), *when* the misrepresentations were made (consistently, but at the very least as early as approximately April 30, 2012) (¶35; *see also* Yastrab Decl. ¶¶4, 5), and *how* the misrepresentations were made (¶35; *see also* Yastrab Decl. ¶¶4, 5; Reich Decl. ¶¶2, 5, 6).

Specifically as applied to Plaintiff's experience, the Complaint alleges that, prior to purchasing the iPhone 4s on April 30, 2012, Plaintiff viewed the Apple Website, which stated, in the technical specifications section, that the iPhone 4s was fully equipped with Bluetooth and Wi-Fi functions and observed the new features of the 4s, including FaceTime and iCloud. ¶35; *see also* Yastrab Decl. ¶¶4-5. Apple's Website also displayed that several thousand apps were compatible with the iPhone 4s. *See* Yastrab Decl. ¶5(c).

This summary of facts not only verifies the particularity of Plaintiff's claims, but also attests to the sufficiency of the pleading of Plaintiff's reliance on the actionable misrepresentations. *See* Def. Mem. at 6.[9] The Complaint alleges that Plaintiff would not have purchased the iPhone 4s had he known that it would lose Wi-Fi and Bluetooth capabilities – especially had he known that the cause of the lost capabilities would be Apple's own software updates. *See* Yastrab Decl. ¶¶7-11. Plaintiff specifically pled:

> [I]n acquiring his iPhone 4s, Plaintiff viewed Apple's representations regarding the iOS update, the iPhone 4s' ability to download future iOS updates, ***Bluetooth and Wi-Fi connection capabilities***, ability to backup data via iCloud and the ability to

---

[9] References to "Def. Mem." are to pages of Apple Inc.'s Notice of Motion and Motion to Strike Class Allegations; Memorandum of Points and Authorities in Support Thereof.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT - 5:14-cv-01974-EJD

- 10 -

run apps via a Wi-Fi connection.  Plaintiff would not have acquired the iPhone 4s if he had not seen these representations.

¶35; *see also* Yastrab Decl. ¶¶7-11.

In essence, through his description of Defendant's actionable misrepresentations and his reliance on those statements, Plaintiff provided Apple sufficient notice as to the circumstances surrounding its alleged misconduct and allowed Apple to properly prepare its defense.  ¶¶19, 35, 43; *see also* Yastrab Decl. ¶¶4-11; *Ticketmaster LLC v. RMG Tech.*, No. CV07-2534 ABC (JCx), 2007 U.S. Dist. LEXIS 81573, at *7 (C.D. Cal. Oct. 12, 2007) ("Plaintiff's FAC satisfies Rule 9(b) because it is specific enough to give Defendant notice of the particular misconduct alleged against it.").[10]

Considerably, Apple's misrepresentations regarding the iPhone's smartphone capabilities – with Wi-Fi and Bluetooth functionality – were part of Apple's consistent, national marketing campaign.  *See* Reich Decl. ¶6.  As such, Plaintiff is not even required to specify each and every time he was exposed to one of Apple's misrepresentations.  *See Oreck Corp Halo Vacuum & Air Purifiers Mktg. and Sales Practices Litig.*, No. ML 12-2317 CAS (JEMx)., 2012 U.S. Dist. LEXIS 172869, at *42 (C.D. Cal. Dec. 3, 2012) (under Rule 9(b) "it would be unfair to require plaintiffs to recall and specify precisely which of the many advertisements they saw were there particular advertisements they relied upon").  Rather, "it is sufficient for [Plaintiff] to provide a representative selection of the advertisements or other statements to indicate the language upon which the implied misrepresentations are based."  *Morgan v. AT&T Wireless Servs. Inc.*, 177 Cal. App. 4th 1235, 1262 (Cal. App. 2009); *see also Ticketmaster L.L.C.*, 2007 U.S. Dist. LEXIS 81573, at *6.  ("Rule 9(b) does not require a plaintiff to allege, in detail, all facts to support each and every instance of [fraud] over a multi-year period.")

---

[10]   Again, Plaintiff maintains that he has adequately alleged that Apple engaged in consistent, nationwide marketing and advertising of the iPhone as a smartphone device which had Wi-Fi and Bluetooth capabilities that would remain functional with Apple's software updates made in the ordinary course.  *See* ¶¶19, 35, 43.  Should this Court call for more detail to sustain Plaintiff's claims, Plaintiff has verified, for example, that he viewed representations on the Apple Website, which stated that the iPhone 4s was a smartphone, that he purchased the iPhone 4s in reliance on those representations and would not have purchased the iPhone 4s if Apple had not represented that it had Wi-Fi and Bluetooth capabilities or if he had known that future iOS updates could "eliminate or damage" his iPhone's hardware features, like Wi-Fi and Bluetooth.  *See* Yastrab Decl.

1        Defendant cannot validly dispute – though it tries, *see* Def. Mem. at 5 – that Plaintiff relied

2   on its representations.  Plaintiff has stated that he relied on Apple's statements on the Apple Website,

3   print and media advertisements and marketing.  *See* Yastrab Decl. ¶6; Reich Decl. ¶6.  Further,

4   Plaintiff has alleged that he did not recall any representations about the iPhone 4s indicating that the

5   future iOS software updates would, or could, impair the iPhone's Wi-Fi and Bluetooth functionality,

6   or any other functionality, and believed that this ostensible update would only enhance his iPhone.

7   Yastrab Decl. at 7-10.  Plaintiff would not have purchased the iPhone 4s but for Apple's exclusion of

8   information that iOS updates could be incompatible with certain devices.  *See* Yastrab Decl. ¶11.  In

9   sum, Plaintiff clearly states that he relied upon Apple's representations (¶35; Yastrab Decl. ¶¶4, 5),

10  and any effort to refute that is simply inappropriate at this stage of the litigation.  *See Morgan v.*

11  *Wallaby Yogurt Co., Inc.*, No. 13-cv-00296, 2014 U.S. Dist. LEXIS 34548, at *33 (N.D. Cal. Mar.

12  13, 2014) (upholding reliance allegations noting that "the Ninth Circuit has made it clear that such

13  questions are issues of fact inappropriate for resolution of a motion to dismiss").

14       More significantly, Apple cannot deny the extensiveness of its broad-based, nationwide

15  iPhone marketing campaign of iPhones, coupled with: (i) the inclusion of the smartphone labeling of

16  the iPhones; (ii) the value of Wi-Fi capability to iPhone users; and (iii) the importance of Bluetooth

17  to the overall functionality of iPhones.  *See* Reich Decl. ¶¶4(a)-(c), (i)-(k) and 6.  Bearing in mind

18  these well-pled facts, the authority cited by Apple in an attempt to undermine the particularity of the

19  Complaint has no bearing here.  Def. Mem. 3-5.  In *Baltazar v. Apple Inc.*, No. Cv-10-3231, 2011

20  U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011), Def. Mem. at 4, the plaintiff did not specify the

21  particular advertisement that stated that the iPad could be used as an e-reader and, critically, could

22  not establish the falsity of any such advertisement.  *See id.* at *11.[11]  In *Maxwell v. Unilever United*

23  
_____

[11]  Defendant's citation to *Coastal Abstract Service, Inc. v. First American Title Insurance Co.*, 173
24  F.3d 725 (9th Cir. 1999) is entirely off the mark, as it presents a completely different legal and
     factual scenario than is before the Court.  *Coastal* involves a claim made by a corporation against a
25  title insurance company for defamation, tortious interference with contract, and false advertising
     under the Lanham Act.  *See id.* at 730.  There, the court concluded that the corporation's statements
26  to the effect that the title insurance company was not "paying its bills" and was "too small" were
     merely "puffery" and were too vague and subjective to be actionable.  *Id.* at 731.  *Coastal* is
27  completely inapposite.  In fact, there is no sensible way in which Defendant can similarly argue that
     its statements were puffery because the misrepresentations at issue here describe objective
28  capabilities of the iPhones.

1    *States Inc.*, No. 5:12-CV-01736-EJD, 2013 U.S. Dist. LEXIS 51195 (N.D. Cal. Apr. 9, 2013), Def.

2    Mem. at 4, plaintiff could not even identify which products he purchased **and** which

3    misrepresentations he relied on.  *See id.* at *15.[12]  Unlike in *Baltazar* or *Maxwell*, Plaintiff here

4    alleged sufficient detail concerning the misrepresentations made by Apple, the materiality of those

5    statements to consumers, and Plaintiff's reliance on them as part of the benefit of the bargain.

6          Unable to truly refute the smartphone-, Wi-Fi- or Bluetooth-related misrepresentations,

7    Apple misdirects the focus of Plaintiff's claims as based solely on the statements Apple made in

8    connection with iOS 7.  *See* Def. Mem. 6-7.  Defendant says that Plaintiff could not have relied on

9    Apple's representations regarding the iOS 7 download because those representations were made

10   after Plaintiff's purchase of the iPhone 4s.  *See id.* at 6.  This position, however, mischaracterizes

11   Plaintiff's claims and, at best, touches upon only part of Plaintiff's claim.  The Complaint

12   emphasizes Defendant's marketing of the iPhone as a smartphone and, specifically, as having Wi-Fi

13   and Bluetooth capabilities.  ¶¶19, 35, 43.  Plaintiff's case does not, necessarily, hinge on the

14   representations Apple made in association with its iOS 7 software update.  *See supra* page 10.

15         Accordingly, Apple's related argument – that Plaintiff's acceptance of the iOS 7 Software

16   License Agreement somehow precludes his claim because the terms of the agreement state that the

17   software is provided to the user "as is" – is plainly irrelevant.  *See* Def. Mem. at 6.  The notion that a

18   disclaimer, buried in the terms and conditions of the iOS 7 software update, can bar Plaintiff's

19

20

21

---

22  [12]    The other cases cited by Apple are equally distinguishable in that the plaintiffs there could not
allege: (i) what was false about the representations at issue; (ii) whether the representations were
23  false at all; and/or (iii) that they were even exposed to the alleged representations.  *See* Def. Mem.
3-6, citing *Herrington v. Johnson & Johnson Consumer Cos. Inc.*, No. C 09-1597 CW, 2010 U.S.
24  Dist. LEXIS 90505, at *28 (N.D. Cal. Sept. 1, 2010) (failure to plead misrepresentations that they
relied upon); *Wehlage v. EmPres Healthcare, Inc.*, 791 F. Supp. 2d 774, 790 (N.D. Cal. 2011)
25  (failure to plead exposure to marketing materials, as well as failure to allege what was false about the
promotional materials); *In re iPhone 4s Consumer Litigation*, No. C 12-1127 CW, 2013 U.S. Dist.
26  LEXIS 103058, at *30 (N.D. Cal. July 23, 2013) (failure to plead "how Siri failed to meet the
representations that they claim Apple made").  Here, there is no question that the representations
27  regarding Wi-Fi and Bluetooth functionality were made, that the representations were false as
manifested by the Grayed Out Issue, that Wi-Fi and Bluetooth were central to Apple's iPhone
28  marketing campaign, and that Plaintiff viewed these representations.

1   claims flatly ignores the Complaint's allegations regarding Apple's misrepresentations regarding the

2   iPhones' Wi-Fi and Bluetooth capabilities.[13]

3           **C.   The Complaint Adequately Alleges a Claim Under the CLRA**

4                **1.   CLRA Standard**

5       "The CLRA makes unlawful 'unfair methods of competition and unfair or deceptive acts or

6   practices undertaken by any person in a transaction intended to result or which results in the sale or

7   lease of goods or services to any consumer.'" *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836

8   CW, 2009 U.S. Dist. LEXIS 30732, at *8-*9 (N.D. Cal. Mar. 30, 2009) (citing Cal. Civ. Code

9   §1770(a)). Courts have further reasoned that undisclosed information is deemed "material" where

10  "had the omitted information been disclosed, one would have been aware of it and behaved

11  differently." *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005).

12      Notably, CLRA claims need not be pled under the Rule 9(b) particularity standard. *See*

13  *Villalobos v. CarMax Auto Superstore Cal., LLC*, No. 12-cv-26226-W (KSC), 2014 U.S. Dist.

14  LEXIS 54375, at *9 (S.D. Cal. Apr. 17, 2014) ("Rule 9(b) does not apply to CLRA pleadings

15  because, most importantly, the CLRA makes no mention of any scienter or knowledge

16  requirements").

17      Plaintiff's CLRA claim is simple and straightforward: Apple engaged in "unfair methods of

18  competition" and "unfair or deceptive acts" when it marketed and advertised the iPhones as

19  smartphone devices that would have Wi-Fi and Bluetooth functionality compatible with its software

---

20  [13]   Assuming, for the moment, that the misrepresentations at issue were made solely in connection

21  with the iPhone's software rather than with the iPhone device itself, Apple still cannot avoid liability
    for misleading its customers based on the software's disclaimer. *First*, many users did not actually

22  accept the iOS 7 disclaimer because their devices were updated automatically, without their consent.
    *Second*, Apple cannot simply hide behind an obscure disclaimer that says "Apple does not

23  warrant . . . that the functions contained in, or Services performed by iOS 7 software will meet
    [plaintiff's] requirements." Def. Mem. at 7. The so-called blanket "disclaimer" fails to disclose key

24  risks associated with the acceptance the iOS 7 download – *e.g.*, that the download will reduce the
    basic functionality of the iPhones, including the disabling of Wi-Fi and Bluetooth. *See Shin v. BMW*

25  *of N. Am.*, No. CV 09-00398 AHM (AJWx), 2009 U.S. Dist. LEXIS 67994, at *5 (C.D. Cal. July 16,
    2009) (rejecting defendant car-company's defense that a disclaimer barred liability under the CLRA

26  because the disclaimer did not specify the tendency of wheels to crack over the long term; finding
    that a "reasonable consumer" was likely to be deceived by defendant's conduct). Here, a reasonable

27  consumer would not have known, and could not have known, based on Apple's unspecific
    disclosures, that downloading a routine software update would disable Wi-Fi and Bluetooth

28  capabilities.

---

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT - 5:14-cv-01974-EJD     - 14 -

platform.  ¶¶19, 35, 43.  As it turns out, those marketing statements were untrue.  The materiality of Wi-Fi and Bluetooth performance to Plaintiff, and all users of iPhones, is unquestionable.  In fact, a crucial selling point of the iPhone is its numerous data rich apps which are heavily reliant on Wi-Fi functionality.  Further, Bluetooth is a core component of the iPhone (and any smartphone) as it enables connectivity between devices.  ¶18.  Smartphone users commonly use Bluetooth to speak on the phone while driving which, in many states, including California, is the only safe and legal way to do so.  Thus, there is no disputing the all-importance of these two functions in iPhones, and as components of smartphones in general.  ¶35.  Finally, Plaintiff relied on the veracity of Apple's advertising and would not have purchased the iPhone 4s had he known that the device's Bluetooth and Wi-Fi capabilities would become disabled – particularly, that the Grayed Out Issue would occur – as a result of an Apple-driven software update.  *Id.*

### 2. Defendant's Challenges to the Complaint's CLRA Allegations Lack Merit

Apple challenges Plaintiff's CLRA claim based on its own, revamped, rendition of the allegations contained in the Complaint.  Plaintiff alleges Apple's misrepresentations pertaining to the iPhone and details how Apple's course of action in rolling out and installing iOS updates on iPhones caused degradation to the iPhones' functionality.  ¶¶54-55.  Apple, by either ignoring the full scope of the Complaint or modifying the pleading to fit its own legal position, focuses solely on the misrepresentations it made in connection with software updates and, more specifically, in connection with one software update: iOS 7.

For instance, Defendant seeks to dismiss the CLRA claim on the basis that iOS 7 is neither a "good" nor a "service" covered under the CLRA.  *See* Def. Mem. at 10.  Defendant further contends that the CLRA is inapplicable because Plaintiff downloaded iOS 7 for free – "at no additional cost." Def. Mem. at 11.  As shown, these arguments sidestep the allegations of the Complaint.  Apple completely ignores that Plaintiff alleges that Apple misrepresented, for example, the ability of the iPhone to retain Wi-Fi and Bluetooth functionality.  ¶¶19, 35, 43.  Apple's routine, and forced, software updates undoubtedly factored into – or caused – the deterioration of the iPhones' functionality.  That is not, however, the lone focus of this claim or Plaintiff's other claims.  The

1   reality of the fact is that the Complaint focuses on the iPhones themselves; stated differently, the

2   representations Apple used to pitch the iPhones to consumers.  Defendant's argument, therefore,

3   fails.  The iPhone is undoubtedly a "good," statutorily defined by the CLRA as a "tangible chattel[]

4   ***bought*** or leased for use primarily for personal, family, or household purposes."  Cal. Civ. Code

5   §1761(a).  The "good" at issue here is the iPhone, not iOS 7.  *See* Def. Mem. at 11.  And, for that

6   matter, the $199 that Plaintiff spent to replace his iPhone does not reflect a free item.

7         The court in *In re iPhone 4S Consumer Litigation*, No. C 12-1127 CW, 2013 U.S. Dist.

8   LEXIS 103058 (N.D. Cal. July 23, 2013) identified this distinction.  There, the Court sustained

9   Plaintiff's CLRA claim, finding that it applied to the iPhone device itself, and not the software:

10        As explained by another court in this district in *In re iPhone Application Litig.*, 844
          F. Supp. 2d 1040 (N.D. Cal. 2012), in discussing a claim related to a different feature
11        of the iPhone, '***the gravamen of the CLRA claim . . . is not that free apps***
          ***downloaded by Plaintiffs were deficient, but rather that the iPhones (a 'good'***
12        ***covered by the CLRA) purchased by the class members did not perform as***
          ***promised based on a specific functionality of the device*.**  Plaintiffs' claim thus
13        arises out of the sale of a good, and not the downloading of free software.

14   *Id.* at *46.

15        Defendant, separately, argues that it did not make a misrepresentation regarding iOS 7 "at or

16   before time of sale" as required by the CLRA.  Def. Mem. at 11.  According to Apple, Plaintiff

17   cannot make out a CLRA claim because he did not download iOS 7 until almost 18 months after he

18   purchased his iPhone.  *Id.*; *see also* ¶¶35, 54.  This position, once again, ignores the actionable

19   misrepresentation that Apple made in connection with the ***iPhone itself***, including its inherent Wi-Fi

20   and Bluetooth capabilities (*see* ¶¶19, 43).  Thus, when Plaintiff downloaded iOS 7 is irrelevant.

21        **D.    The Complaint Adequately Alleges a Claim Under the UCL**

22        California's Unfair Competition Law (the "UCL") establishes a cause of action to redress

23   business practices that are: (i) unlawful; (ii) unfair; or (iii) fraudulent.  *See Grodzitsky v. Am. Honda*

24   *Co.*, No. 2:12-cv- 1142 SVW-PLA, 2013 U.S. Dist. LEXIS 33387, at *26 (C. D. Cal. Feb. 19, 2013).

25   To be "unlawful under the UCL, the [alleged business practice] must violate another 'borrowed'

26   law."  *Id.*; *see also Anguilar v. Boulder Brands*, No. 12cv01862 BTM (BGS), 2013 U.S. Dist.

27   LEXIS 81378 (S.D. Cal. June 10, 2013) ("The UCL borrows violations from virtually any state,

28   federal, or local law.").  Courts have noted that only one of the three elements of the UCL must be

1   satisfied in order for a plaintiff to state a claim.  *See Morgan*, 177 Cal. App. 4th at 1253. ("The scope

2   of the UCL is quite broad.  Because the statute is framed in the ***disjunctive***, a business practice need

3   only meet one of the three criteria to be considered unfair competition.").

### 1.   Defendant's Conduct Was Unlawful

5       Plaintiff has already met his burden of showing a cause of action under the UCL by

6   establishing a violation of the CLRA.  *See supra* Section III.C.1.

### 2.   Defendant's Conduct Was Unfair

8       Courts determine whether a misrepresentation is "unfair" by using either the "balancing test"

9   or the "public policy test."  The balancing test "involves an examination of [that practice's] impact

10  on its alleged victim, balanced against the reasons, justifications and motives of the alleged

11  wrongdoer.  In brief, the Court must weigh the utility of the Defendant's conduct against the gravity

12  of the harm to the alleged victim."  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255,

13  1268-69 (Cal. App. 2006).  Under *Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone*

14  *Co.*, 20 Cal. 4th 163 (Cal. 1999) which established the public policy test, conduct is "unfair" if it

15  "threatens an incipient violation of a law, or violates the policy or spirit of one of those laws because

16  its effects are comparable to or the same as a violation of the law, or otherwise significantly

17  threatens or harms competition."  *Id.* at 187.

18      Courts have applied the balancing test to consumer cases.  *See Progressive W. Ins. Co. v.*

19  *Superior Court*, 135 Cal. App. 4th 263, 286 (Cal. App. 2005 ) ("We conclude that the balancing test

20  should continue to apply in consumer cases."); *McVicar v. Goodman Global, Inc.*, No. SACV 13-

21  1223-DOC (RNBx), 2014 U.S. Dist. LEXIS 26332, at *20 (C.D. Cal. Feb. 25, 2014).  Plaintiff

22  alleged, with specificity, that Defendant falsely and misleadingly represented to its customers that

23  the iPhone's key capabilities of Wi-Fi and Bluetooth would be functional with routine software

24  updates.  *See* Def. Mem. 8-9; ¶¶19, 35, 43.  And, as a result of those misleading statements, upon the

25  deterioration of their iPhones' functionality, Plaintiff and other iPhone users were forced to purchase

26  replacement devices.  *See* Yastrab Decl. ¶16.  A consumer, and this Court, would be hard pressed to

27  explain how the utility of Defendant's conduct can outweigh the costly harm to consumers.  Apple

28  has not offered any "utility" at all, and certainly cannot demonstrate how any contrived utility can

1   balance the analysis in favor of Apple.  *See McVicar*, 2014 U.S. Dist. LEXIS 26332, at *20 ("The

2   Court is hard-pressed to imagine what possible utility would be generated by offering, then not

3   honoring, warranties on defective products. . . .  But, the harm to the victim is clear[.]"); *Morgan*,

4   2014 U.S. Dist. LEXIS 34548, at *40 ("Because the plaintiffs and others similarly situated care

5   about the presence of added sugar for any number of reasons, including health reasons, I concluded

6   that the plaintiffs have adequately pleaded that the gravity of the alleged harm outweighs any utility

7   of Wallaby's conduct.").

8                    **3.      Defendant's Conduct Was Fraudulent**

9          To state a claim under the 'fraudulent' prong of the UCL, Plaintiff must merely allege that

10  members of the public are likely to deceived.  *See Anguilar v. Boulder Brands, Inc.*, No. 12cv01862

11  BTM (BGS), 2013 U.S. Dist. LEXIS 81378, at *13 (S.D. Cal. June 10, 2013); *see also In re HP*

12  *Inkjet Printer Litig.*, No. C 05-3580 JF, 2006 U.S. Dist. LEXIS 12848, at *12 (N.D. Cal. Mar. 7,

13  2006) (upholding UCL claim because "the website statements could deceive a reasonable

14  consumer").[14]  Here, the public would be (and was) inevitably deceived by Apple's representations

15  that the iPhone had (and would have) Wi-Fi and Bluetooth functionality.  ¶¶19, 35, 43.  These key

16  smartphone capabilities were disabled, and the iPhones generally had deteriorated functionality, after

17  routine and expected iOS updates.  Not only were Apple's misrepresentations likely to deceive, they

18  ultimately did deceive Plaintiff and were a substantial factor in his decision to purchase his

19  iPhone 4s.  ¶35.

20          Accordingly, Plaintiff has adequately alleged a UCL violation.

21                    **E.      The Complaint Adequately Alleges a Claim for Negligent
                              Misrepresentation**

22

23          The elements of a negligent misrepresentation claim are "(1) a misrepresentation of past or

24  existing material fact (2) without reasonable grounds for believing it to be true, (3) with intent to

25  induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable

26  ─────────────────────
    [14]   "The Ninth Circuit has noted that whether a business practice is deceptive will usually be a
27  question of fact not appropriate for decision on demurrer."  *Anguilar*, 2013 U.S. Dist. LEXIS 81378
    at *13-*14; *see Shin*, 2009 U.S. Dist. LEXIS 67994, at *5 (noting that it is a "rare situation in which
28  granting a motion to dismiss [a deceptive practices claim] is appropriate").

1    reliance thereon by the party to whom the misrepresentation was directed, and (5) damages."

2    *Barrier Specialty Roofing & Coating, Inc. v. ICI Paints N. Am. Inc.*, No. CV F 07-1614 LJO TAG,

3    2008 U.S. Dist. LEXIS 120604, at *16 (E.D. Cal. July 11, 2008).  Here, the Complaint adequately

4    alleges that in order to induce customers to purchase the iPhones, Apple negligently and recklessly

5    misrepresented material facts regarding the quality and character of the iPhones and convinced

6    consumers that these devices were fully Wi-Fi and Bluetooth equipped when Apple either knew or

7    reasonably should have known that the iPhones' functionality could be degraded, including by the

8    Grayed Out Issue, as a result of Apple's routine and often compulsory software updates.  ¶121.

9        Defendant maintains that Plaintiff has not adequately alleged a negligent misrepresentation

10   claim because Plaintiff did not claim personal injury or damage to other property and, as such, his

11   remedy is exclusively in contract.  *See* Def. Mem. at 12.  Contrary to Apple's position, and as

12   authority in this District has established, where a negligent misrepresentation claim is based on a

13   defendant's fraudulent statements, the economic loss rule does not apply.  *See Barrier Specialty*

14   *Roofing*, 2008 U.S. Dist. LEXIS 120604, at *16 (finding that the economic loss rule does not apply

15   to negligent misrepresentation claims because "negligent misrepresentation cause[s] of action

16   sound[] more in deceit/ fraud than negligence.  Negligent misrepresentation damages arise from

17   misrepresentation of past or existing material facts and are distinguishable from negligence and strict

18   liability damages."); *First Class Vending, Inc. v. ITC Sys.*, No. CV 12-2342-ODW (PLAx), 2012

19   U.S. Dist. LEXIS 139720, at *12 (C.D. Cal. June 26, 2012) (declining to apply the economic loss

20   rule where negligent misrepresentation claim relied on wrongful conduct and defendant's

21   misrepresentation regarding product); *see also Aventis Techs. Corp. v. JP Morgan Chase Bank*, No.

22   CIV -03-1624 JWS, 2004 U.S. Dist. LEXIS 8302, at *10 (D. Ariz. Jan. 26, 2004) ("In sum, this

23   court concludes that claims seeking to recover purely pecuniary losses based on negligent

24   misrepresentation are not foreclosed by the 'economic loss' rule."); *Frye v. The Wine Library, Inc.*,

25   No. 06-5399 SC, 2006 U.S. Dist. LEXIS 96075, at *8 (N.D. Cal. Dec. 4, 2006) (noting that "[a]s

26   Plaintiff's negligent misrepresentation claim can be characterized as relating to Defendant's

27

28

1    inducement of Plaintiff to contract, there is also no question of it being barred by the economic loss

2    rule").[15]

3         Accordingly, Plaintiff has stated a claim for negligent misrepresentation.

4    **F.      The Complaint Adequately Alleges a Breach of an Express Warranty**

5         The three basic requirements of an express warranty claim are: "(1) the seller's statements

6    constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part

7    of the basis of the bargain; and (3) the warranty was breached." *Allen v. Similasan AG*, Case No.

8    12cv0376-BTM-WMC, 2013 U.S. Dist. LEXIS 69369, at *14-*15 (S.D. Cal. May 14, 2013); *see*

9    *also* Cal. Com. Code §2313(a).  Here: (i) Apple's statements regarding the functionality of the

10   iPhones, particularly as a smartphone, which included Wi-Fi and Bluetooth features, constituted an

11   affirmation of fact *and* a description of the good – the iPhone (¶¶19, 35, 43); (ii) the statements were

12   part of the pervasive and widespread marketing of the iPhones, were a basis for Plaintiff's decision

13   to purchase his iPhone, and were overall part of the sale process (Reich Decl. ¶6); and (iii) the

14   Grayed Out Issue (among other issues) occurred, representing a blatant breach of that warranty.  ¶55.

15   The requirements of an express warranty claim have clearly been met.

16        A formal warranty is not required, as "[s]tatements made by a manufacturer though its

17   advertising efforts can be construed as warranty statements." *Aaronson v. Vital Pharm., Inc*., No.

18

---

19   [15]   Defendant's reliance on *Oracle USA, Inc. v. XL Global Services Inc.*, No. C 09-0537 MHP, 2009
     U.S. Dist. LEXIS 59999 (N.D. Cal. July 13, 2009) does not dictate another conclusion.  *See* Def.
20   Mem. at 12.  Importantly, there, the court addressed the distinct issue of whether plaintiff's
     promissory fraud claim was barred by the economic loss rule.  *See id.* at *8.  In *Oracle*, plaintiff-
21   software provider sued defendant-insurance company for breach of contract and promissory fraud
     claiming that defendant never paid for the services rendered and induced plaintiff to extend the
22   contract by falsely promising to pay the amount due.  *See id.* *4-*7.  Plaintiff sought partial
     judgment on its promissory fraud claim and the court concluded that plaintiff's claim was barred by
23   the economic loss rule because the dispute at issue was governed solely by the contract between the
     parties.  *See id.* at *21.  Not so here.  As discussed above, Plaintiff's negligent misrepresentation
24   claim sounds in fraud and, as set forth by authority in this District, is not precluded by the economic
     loss rule.  The court's opinion in *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp.
25   2d 1029 (N.D. Cal. 2012) also does not advance Defendant's argument.  *See* Def. Mem. at 12.
     There, the court found that defendant's behavior did not offend public policy and therefore, the law
26   provided a sufficient remedy via contract law.  *See id.* at 1044.  Here, by marked contrast, Apple
     engaged in wrongful conduct by falsely promising consumers a fully functional iPhone only to have
27   the device disabled by the Apple's own software updates.  This behavior goes beyond the mere
     commercial contractual disputes at issue in *JMP Securities* as it is unfair and fraudulent as discussed
28   above in Section III.B.

---

09-CV-1333W (CAB), 2010 U.S. Dist. LEXIS 14160, at *17 (S.D. Cal. Feb. 17, 2010). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the descriptions." Cal. Com. Code §2313(b). To create an express warranty, the seller/ retailer need not use the word "warranty" or "guarantee" and he need not even have the intent to make the warranty. *Id.* at §2313(c)(2). Applying these supporting authorities to Plaintiff's allegations only serves to confirm that the Complaint satisfies the elements of his express warranty claim and substantiates that the cause of action should be sustained.

Defendant does not refute that it advertised and marketed the iPhones as smartphones which included Wi-Fi and Bluetooth features. Apple does not refute that those statements were part of the pervasive and widespread marketing of the iPhones. And Apple does not refute that the Grayed Out Issue occurred. Unable to refute these elements of the express warranty claim, Apple, instead, offers the argument that Plaintiff did not sufficiently plead the warranty's terms. *See* Def. Mem. at 13. Without rehashing every misrepresentation, Apple's argument on this issue is patently negated by the straight forward allegations in the Complaint and elaborated upon in this brief. *See supra* Section III.B.

Not surprisingly, Defendants could not cite to any case law to support the contention that an express warranty claim should not be sustained based on the developed allegations set forth in the Complaint. For instance, in one decision relied on by Apple, *Rossi v. Whirlpool Corp.*, No. 12-cv-125-JAM-JFM, 2013 U.S. Dist. LEXIS 46167 (E.D. Cal. Mar. 28, 2013), Def. Mem. at 13, the court found that purchasers of a refrigerator with a sticker which falsely indicated that it was part of the ENERGY STAR® program failed to plead the exact terms of the alleged warranty. *See id.* at *10. The *Rossi* court underscored that to adequately allege a claim for a breach of an express warranty, plaintiff must clearly identify "the express warranty and the ***very specific meaning [it had] to them***, that [was] supported by industry standards and by [the defendants'] own advertisements, product specifications and promotional materials . . . and that they specifically relied on this express representation in purchasing their [product]." *Id.* at *10. Here, unlike in *Rossi*, Plaintiff has done just that. The Complaint describes the Apple Website Plaintiff viewed prior to purchasing his iPhone 4s. ¶¶19, 35, 42; Yastrab Decl. ¶5. The Complaint also pleads that Apple's representations

1   highlighted the iPhone's Wi-Fi and Bluetooth capabilities, including the newest Wi-Fi dependent

2   features of the 4s (*e.g.*, including FaceTime and iCloud).  *Id.*

3          Next, Apple claims that Plaintiff cannot rely on a supposed express warranty that he never

4   saw.  *See* Def. Mem. at 14.  Aside from being factually inaccurate,[16] it is unclear what bearing

5   Defendant's observation has on the express warranty analysis, because, as a threshold matter,

6   reliance is not a required element of a cause of action for breach of express warranty.  Indeed, the

7   court in *Horvath v. LG Electronics Mobilecom U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 U.S.

8   Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) said: "It is an incorrect legal assumption that a breach

9   of express warranty claim requires proof of prior reliance.  While the tort of fraud turns on

10  inducement, as we explain, breach of express warranty arises in the context of contract formation in

11  which reliance plays no role."  *Id.* at *16; *see also, Weinstat v. Dentsply Internat., Inc.*, 180 Cal.

12  App.4th 1213, 1227 (Cal. App. 2010) ("While the tort of fraud turns on inducement, as we explain,

13  breach of express warranty arises in the context of contract formation in which reliance plays no

14  role"); *In re Sony VAIO Computer Notebook Trackpad Litig*, No. 09cv2109 BEN (RBB), 2010 U.S.

15  Dist. LEXIS 115142, at *6 (S.D. Cal. Oct. 28, 2010) ("the omission of specific pleadings as to

16  reliance are not fatal if reliance can be reasonably inferred from the tenor and totality of the

17  allegations of the complaint").

18         However, even if reliance were a necessary element of a breach of express warranty claim

19  (which it is not), Plaintiff has adequately pled reliance by alleging that he would not have purchased

20  the iPhone 4s had he known that the device would not have Wi-Fi and Bluetooth capabilities when

21  required software was downloaded.  In particular, Plaintiff has pled that:

22         [I]n acquiring his iPhone 4s, Plaintiff viewed Apple's representations regarding the
            iOS update, the iPhone 4s' ability to download future iOS updates, ***Bluetooth and***
23         ***Wi-Fi connection capabilities***, ability to backup data via iCloud and the ability to
            run apps via a Wi-Fi connection.  Plaintiff would not have acquired the iPhone 4s if
24         he had not seen these representations.

25  ¶35.  These allegations more than suffice to make out a claim for breach of express warranty.  *See*

26  *Tasion Commc'ns Inc. v. Unbiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 U.S. Dist. LEXIS

27  ────────────────
    [16]   The Complaint alleges (¶35), and this brief has confirmed (¶35; Yastrab Decl. ¶4), that Plaintiff
28  did, in fact view Apple's statements.

88055, at *34 (N.D. Cal. June 26, 2014) (upholding breach of express warranty claims where "Plaintiffs have alleged that they relied on Ubiquiti's 'labeling representations set forth herein' and then expressly list[] the alleged representations").

### G.  Leave to Amend

In connection with Plaintiff's Memorandum of Law in Opposition to Defendant Apple's Motion to Dismiss, Plaintiff and his counsel have filed a declaration which complements the allegations of the Complaint by providing detailed data regarding the particular website that Plaintiff viewed and relied upon prior to purchasing his iPhone.  Provided that the Court finds these or any other details necessary to establish the Complaint's sufficiency, Plaintiff respectfully submits that the Court, in keeping with the liberal requirements of the Federal rules, should grant Plaintiff leave to amend his pleading.  *See*  Fed. R. Civ. P. 15(a)(2) ("the court should freely give leave when justice so requires").  Indeed, courts in this District have held that "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts."  *Graves v. Sw. & Pac. Sepcialty Fin., Inc.*, No. C 13-1159, 2013 U.S. Dist. LEXIS 158512, at *6 (N.D. Cal. Nov. 4, 2013); *Tait v. BSH Home Appliance Corp.*, SACV 10-00711 DOC (ANx), No. 2011 U.S. Dist. LEXIS 103584, at *4 (C.D. Cal. Aug. 31, 2011) ("Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment.").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

DATED:  August 15, 2014                         Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                SHAWN S. WILLIAMS


                                                       */s/ Shawn S. Williams*
                                                _____
                                                   SHAWN S. WILLIAMS

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT - 5:14-cv-01974-EJD

- 23

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK S. REICH
LAUREN E. KARALIS
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mreich@rgrdlaw.com
lkaralis@rgrdlaw.com

*Attorneys for Plaintiff*

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT - 5:14-cv-01974-EJD

- 24