United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID YASTRAB, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:14-cv-01974-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 14, 15 |

Plaintiff David Yastrab ("Plaintiff") brings the instant putative class action against Defendant Apple Inc. ("Apple") in which he alleges his iPhone 4's Wi-Fi and Bluetooth capabilities stopped working after he downloaded a software update. Presently before the Court are two motions filed by Apple: one to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and one to strike the class allegations from the Complaint under Rule 12(f). See Docket Item Nos. 14, 15. Plaintiff has filed written opposition to both motions. See Docket Item Nos. 18, 19.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Having carefully reviewed the parties' briefing and for the reasons explained below, the Motion to Dismiss will be granted while the Motion to Strike will be denied.

1

Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the center of this case is Apple's popular iPhone product, which first debuted in 2007. See Compl., Docket Item No. 1, at ¶ 2. iPhones come equipped with a mobile operating system called iOS, which consists of a collection of software applications, or "apps." Id. at ¶ 3. These apps allow users to utilize the features of Apple products. Id. Since its first version in 2007, the iOS operating system has been updated several times by Apple. Id. at ¶ 4. When a new version of iOS is released, Apple prompts users to download the update via a message on their iPhone. Id. at ¶ 5.

Three iPhone models are implicated in the Complaint: the iPhone 4 released in 2010, the iPhone 4s released in 2011, and the iPhone 5 released in 2012. Id. at ¶¶ 2, 3. Also implicated is an update to the iOS software known iOS 7, which was unveiled by Apple on June 10, 2013. Id. at ¶¶ 1, 2, 3, 16. According to the Complaint, Apple described iOS 7 as "a platform for over a million mobile apps, iCloud,[1] and includes security features that prevent unauthorized access to Apple devices." Id. at ¶ 8. Plaintiff, however, contends that users of the iPhone 4, 4s, and 5 experienced reduced functionality as a result of installing iOS7, "essentially forcing consumers to render their iPhones obsolete." Id. at ¶ 1.

Plaintiff is a New York resident who acquired an iPhone 4s on or around April 30, 2012. Id. at ¶ 53. In doing so, Plaintiff alleges that he viewed Apple's representations regarding "the iPhone 4s's ability to download future iOS updates, Bluetooth[2] and Wi-Fi connection capabilities, ability to backup data via iCloud and the ability to run apps via a Wi-Fi connection," and would

---

[1] iCloud is a free "cloud service" offered by Apple to a user of its products which allows the user "to automatically and wirelessly" store content and "automatically and wireless push" that content to all of the user's Apple devices. See Compl., at ¶ 12. In other words, iCloud allows users to backup data from their iPhone to the "cloud" and make it available to other Apple devices. Id. at ¶ 13.

[2] "Bluetooth allows users to '[e]xchange or synchronize data between Bluetooth enabled computers and devices', '[u]se a Bluetooth enabled wireless keyboard or mouse", '[c]onnect wirelessly to a Bluetooth compatible printer, headset, headphones, or speakers', and '[s]hare your internet connection with other Bluetooth enabled devices.'" Id. at ¶ 18.

2
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

not have acquired the iPhone 4s had he not seen these representations. Id. at ¶ 35. Plaintiff believes these representations, as well as Apple's advertising and marketing campaigns, were designed to induce consumers to purchase the iPhone over other smartphones "because of their Bluetooth and Wifi connection capabilities, large library of apps, iCloud and Siri[3] - all of which require a Network connection or Wi-Fi connection to operate." Id. at ¶ 19.

Plaintiff received an alert from Apple in or about October 2013 notifying him that iOS 7 was available and he promptly downloaded it. Id. at ¶ 54. However, after the download was complete and the updated software installed, the Wi-Fi and Bluetooth connection capabilities on his iPhone 4s were disabled, or "grayed out." Id. at 55. Plaintiff alleges that the "grayed out" problem was experienced by a large number of users of the iPhone 4, 4s and 5, and that Apple received "thousands of comments" concerning the problem. Id. at ¶ 56. An updated version of iOS 7 was thereafter released on March 10, 2014 - iOS 7.1 - but that update did not resolve the "grayed out" problem.[4] Id. at ¶ 63. Nor was Plaintiff able to resolve the issue with his iPhone 4s after following instructions on Apple's website and visiting two Apple stores. Id. at ¶ 68. In addition, Apple would not allow iPhone users to downgrade their mobile software to a previous version of iOS. Id. at ¶¶ 69-71.

Plaintiff alleges that, because the Wi-Fi and Bluetooth connection capabilities were "grayed out" after installing iOS 7, users of the iPhone 4s were forced to use their cellular network connection for all features requiring an internet connection, such as iCloud and Siri. Id. at ¶¶ 19, 73. As a result, users incurred "unanticipated monthly data usage charges" with their cellular provider and were left with an iPhone "of significant reduced value and utility." Id. at 73.

---

[3] "Siri is speech-recognition software that comes standard on every iPhone 4 and iPhone 5 . . . . It allows users to verbally give their iPhones commands and takes to complete . . . . For example, if you ask Siri to add something to your personal calendar, if is programmed to make the addition to your calendar and verbally confirms that the task is completed." Id. at ¶ 9.

[4] According to Plaintiff, "grayed out" iPhone users would not have been able to download the updated version of iOS or any other resolution patches "because such downloads require a Wi-Fi connection and cannot be downloaded over a Network connection." Id. at ¶ 23.

Because the "grayed out" problem was wide-ranging, Plaintiff believes it is "reasonable and plausible" to infer that Apple had either actual or constructive knowledge of the shortcomings in the iPhone 4s and iOS 7 prior to their distribution, and that Apple withheld this material information from consumers. Id. at ¶¶ 75-76. He seeks to represent the following classes:

> GENERAL CLASS: All users who experienced loss or reduced functionality of their iPhone as a result of upgrading iOS.
>
> SUBCLASS: All users of Apple iPhone 4s in the United States who experienced a loss of Wi-Fi and/or Bluetooth functionality after downloading iOS 7.

Plaintiff filed the Complaint underlying this action on April 29, 2014. He asserts five claims under California law: (1) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§1750 et seq., (2) violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 et seq., (3) breach of express warranty, (4) intentional misrepresentation, and (5) negligent misrepresentation. These motions followed.

## II. LEGAL STANDARD

### A. Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint is construed in the light most favorable to the non-moving party, and all material allegations in the complaint are taken to be true. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986). This rule does not apply to legal conclusions, however - "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). While a complaint does not need detailed factual allegations to survive a 12(b)(6) motion, plaintiffs must at least provide grounds demonstrating their entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the plaintiff must allege sufficient factual allegations "to raise a right to relief above the speculative level." Id. This threshold is reached when the complaint contains sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678.

4

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted).

Mechanically speaking, the court "may not consider any material beyond the pleadings" when considering a motion to dismiss.[5] Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).

**B. Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any

---

[5] Plaintiff filed two declarations with over 200 pages of attachments along with his opposition to Apple's motions. See Docket Item Nos. 20-23. Apple objects to this evidence because it is neither subject to judicial notice nor specifically relied upon in the Complaint. The court agrees with Apple that consideration of this new information is improper. Accordingly, Apple's objection is sustained, and this information is disregarded for the purposes of this analysis.

5
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id.

Rule 12(f) motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. See Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). They are "not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." Rosales v. Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Thus, any doubt concerning the import of the allegations weighs in favor of denying the motion to strike. See In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

### III. DISCUSSION

For the Motion to Dismiss, Apple argues that Plaintiff's Complaint is deficient because (1) the claims are not pled with particularity as required by Rule 9(b), and (2) the causes of action do not contain sufficient factual matter to state a claim. For the Motion to Strike, Apple believes the class allegations should be stricken as overbroad and unascertainable. It also argues that individual questions will predominate under Plaintiff's class definition, and that Plaintiff's claims are atypical in any event. These motions are addressed in turn.

#### A. Motion to Dismiss

##### i. Rule 9(b)

Apple argues that Plaintiff's CLRA, UCL and misrepresentation claims must be plead with particularity under Rule 9(b). For his part, Plaintiff does not necessarily dispute that Rule 9(b) applies to the UCL and misrepresentation claims, but argues that the CLRA falls outside of the particularity requirement. On this issue, the court agrees with Apple. The claims must meet the

6

Rule 9(b) standard because they all stem from one basic claim grounded in fraud, specifically, that Apple misrepresented the iPhone's ability to download updates and retain functionality. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b)'s particularity requirement applies to causes of action under the UCL and CLRA); see also Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."). The CLRA claim is no different than its companion claims in that respect, since it is based on the same alleged misrepresentations. See Compl., at ¶ 90 ("Defendant violated and continues to violate the [CLRA] by . . . (a) Representing that the iPhone 4, iPhone 4s and/or iPhone 5 have characteristics and benefits which they do not have; (b) Representing that the iPhone 4, iPhone 4s and/or iPhone 5 are of a particular standard, quality, or grade, which they are not; (c) Advertising the iPhone 4, iPhone 4s and/or iPhone 5 with intent not to sell them as advertised; and (d) Representing that the iPhone 4, iPhone 4s and/or iPhone 5 has been supplied in accordance with previous representations when they have not."); ¶ 75 ("[I]ts [sic] reasonable and plausible to infer that Defendant had either actual or constructive knowledge of the iPhone 4s and iOS 7's shortcomings prior to their distribution."). Under his theory of liability, Plaintiff simply cannot state a CLRA claim without allegations based in fraud. See Vess, 317 F.3d at 1105 ("[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim."); see also Kearns, 567 F.3d at 1125 (holding that when a plaintiff alleges "a unified course of fraudulent conduct" and relies entirely on that conduct as a basis for the claim, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,'" and must satisfy the particularity requirement of Rule 9(b)). Accordingly, the court will analyze the CLRA, UCL and misrepresentation claims under Rule 9(b).

### ii. CLRA

The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or

7
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

practices." Cal. Civ. Code § 1770(a); In re Actimmune Marketing Litig., No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *47, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009). As relevant here, the CLRA prohibits a person from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," "[a]dvertising goods or services with intent not to sell them as advertised," and "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9), (a)(16).

Three elements are necessary to state a claim under the CLRA: misrepresentation, reliance, and damages. Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009). Apple argues the allegations are insufficient to plead misrepresentation and reliance for multiple reasons. Some of Apple's arguments have merit.

Examining the two elements in order, Plaintiff alleges that Apple misrepresented three characteristics of the iPhone in its marketing, advertising and promotional materials: (1) its ability to download and run iOS 7 effectively; (2) its Bluetooth and Wi-Fi connection capabilities; and (3) its ability to upgrade to new iOS software and run new applications and features. See Compl., at ¶¶ 19, 20, 27. None of these alleged misrepresentations are described with the particularity necessary to support a fraud-based CLRA claim under Rule 9(b). Indeed, despite the Complaint's length, the misrepresentation allegations are made up of nothing more than unadorned references to Apple's advertising campaign and marketing materials, and do not describe even one specific item that Plaintiff allegedly viewed or where and when he viewed it. In other words, missing are allegations informing Apple of how its "extensive multi-million dollar advertising campaign showcasing the iPhone's ability to wirelessly download the latest features and apps from new versions of iOS" reached Plaintiff, and which part of it was seen by him before he decided to purchase the iPhone 4. See Compl., at ¶ 22. It cannot be, as Plaintiff argues, that it is enough under Rule 9(b) to nebulously reference a product's advertising package and just declare the

8

Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

campaign misleading for a claim under the CLRA. Although each alleged statement made by Apple need not be identified at this stage, Plaintiff must at the very least describe some specific statements, state where or on what medium those statements were made, and reveal how Plaintiff accessed them. See Baltazar v. Apple, Inc., No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187, at *6, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ("At the least, Plaintiffs must identify the particular commercial or advertisement upon which they relied and must describe with the requisite specificity the content of that particular commercial or advertisement."); see also In re iPhone 4s Consumer Litig., 2014 U.S. Dist. LEXIS 19363, at *17-18, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ("Rule 9(b) therefore requires Plaintiffs to aver specifically the statements they relied upon in making their purchases, what is false or misleading about the statements, and why those statements turned out to be false."). Only then can the court be satisfied that Plaintiff has met his burden "to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." Ackerman v. Nw. Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1969). Plaintiff's reliance on Morgan v. AT&T Wireless Services, Inc., 177 Cal. App. 4th 1235 (2009), for the proposition that he has met his federal pleading obligations is unpersuasive, considering Morgan discusses only a California pleading standard and was addressing an amended complaint pled with much greater detail.

As to the second element, "consumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual reliance on the misrepresentation and harm.'" Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012) (quoting Nelson v. Pearson Ford Co., 186 Cal. App. 4th 983, 1022 (2010)). Although actual reliance can be presumed or inferred when an alleged misrepresentation is material, a plaintiff must still plausibly allege that the misrepresentation was material, such that a reasonable person "would attach importance to [the misrepresentation's] existence or nonexistence in determining his choice of action in the transaction in question." In re Tobacco II Cases, 46 Cal. 4th 298, 327 (2009).

Actual reliance cannot be presumed or inferred from the Complaint's allegations because

Plaintiff has not plausibly established materiality.  Without more detail describing the marketing materials Plaintiff reviewed before purchase, left unanswered is whether it was reasonable for Plaintiff to believe based on what he saw or heard that his iPhone 4's Bluetooth and Wi-Fi capabilities would always work despite changes to the operating software, or that the phone would be able to download and run iOS 7 effectively when it was eventually released.  See In re iPhone 4s Consumer Litig., 2014 U.S. Dist. LEXIS 19363, at *20-21 (finding plaintiff's allegations insufficient when, in relation to a lawsuit claiming that the iPhone's Siri feature did not always function as advertised, Plaintiff's did not identify "any specific statement by Apple that expressly indicates that Siri would be able to answer every question, or do so consistently.").  Notably, Plaintiff cannot plausibly assert that he relied on any promotional material related to iOS 7 for this purpose since that particular software upgrade is not alleged to have been unveiled until June 10, 2013.  See Compl., at ¶ 16.  Plaintiff purchased his phone more than one year earlier, on April 30, 2012.  Id. at ¶ 35.  Thus, any representations about the subsequently-released operating software, some of which are carefully and uncoincidentally mixed into the Complaint, do not aid Plaintiff in stating a CLRA claim concerning his previously-acquired mobile device.  See, e.g., id. at ¶ 20 ("According to Apple, 'because iOS 7 is engineered to take full advantage of the advanced technologies built into Apple hardware, your devices are always years ahead - from day one to day whenever.'").

Apple's other arguments directed to the CLRA claim - that iOS 7 is not a "good" or "service" that was sold or leased under the statutory scheme, and that the Apple iOS 7 Software Licensing Agreement preclude reliance - are rejected.  The court need to decide whether iOS 7 can support a CLRA cause of action because Plaintiff's claims are directed at the inoperability of his phone, not at problems with the iOS 7 software itself.  The iPhone 4s is indisputably a "good" that was sold.  See In re iPhone 4s Consumer Litig., No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058, at *45-46, 2013 WL 3829653 (N.D. Cal. July 23, 2013) (explaining the distinction between cases alleging defects in software which do not support a CLRA claim, and those based

10

Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

on defects in the mobile device which do support a CLRA claim). Additionally, the Apple iOS 7 Software Licensing Agreement is of no moment to Plaintiff's decision to acquire the iPhone 4 since, again, the software was not released until well after Plaintiff's purchase. Presumably, the referenced licensing agreement came to Plaintiff at the time he updated the operating software, not before he bought the phone.

For these reasons, Plaintiff has not sufficiently alleged a violation of the CLRA. Accordingly, the claim will be dismissed with leave to amend.

### iii. UCL

The UCL prohibits acts of unfair competition, including "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that Apple's conduct violated all three "prongs" of the UCL.

A violation of the "unlawful" prong of the UCL may be established by a variety of unlawful acts, including those practices prohibited by law, whether "civil or criminal, federal, state, municipal, statutory, regulatory, or court-made." Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838-39 (1994). Plaintiff's claim under the "unlawful" prong is based on a violation of the CLRA. Since Plaintiff has not established a violation of the CLRA, he similarly has not established this prong of the UCL.

To state a claim under the "fraudulent" prong of the UCL, a plaintiff must allege that the challenged practice is likely to deceive members of the public. Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1274 (2006). Reduced to elements, "plaintiffs must allege with specificity that defendant's alleged misrepresentations: (1) were relied upon by the named plaintiffs; (2) were material; (3) influenced the named plaintiffs' decision to purchase the product; and (4) were likely to deceive members of the public." In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012). The sufficiency of a UCL fraud claim is routinely analyzed with a corresponding CLRA claim. Id. (citing Kowalsky v. Hewlett-Packard Co., 2011

1  U.S. Dist. LEXIS 89379, at *17-18, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011)). Since Plaintiff has not adequately identified with sufficient particularity the misrepresentation or fraudulent statements made by Apple which he relied upon to purchase the iPhone 4s, he has failed state a claim under the "fraudulent" prong of the UCL.

The UCL also creates a cause of action for a business practice that is "unfair" even if not specifically proscribed by some other law. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). To determine whether a practice is unfair in a consumer action, the court weighs the utility of defendant's conduct against the gravity of the harm to the alleged victim. Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 1268 (2006).

Here, Plaintiff's own description of his "unfair" claim establishes that it is based on the same conduct underlying the CLRA claim. See Opp'n, Docket Item No. 19, at p. 17 ("Plaintiff alleged, with specificity, that Defendant falsely and misleadingly represented to its customers that the iPhone's key capabilities of Wi-Fi and Bluetooth would be functional with routine software updates."). But as already explained, the allegations of misrepresentation are not sufficient to support this theory. Plaintiff has not pointed to anything specific within Apple's advertising or marketing of the iPhone which promises that the Wi-Fi and Bluetooth functions would operate without interruption through all software updates. He therefore has not stated a claim under this prong of the UCL.

Because the allegations are insufficient under all three prongs, the UCL claim will be dismissed with leave to amend.

### iv. Breach of Express Warranty

To prevail on a breach of express warranty claim, "a plaintiff must prove (1) the seller's

12
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

statements constitute an 'affirmation of fact or promise' [which relates to the goods] or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010) (quoting Keith v. Buchanan, 173 Cal. App. 3d 13, 20 (1985)).

Plaintiff alleges that a warranty was created between Apple and its customers who purchased an iPhone through "promises and affirmations of fact made by [Apple] on its website and through its marketing and advertising campaign." See Compl., at ¶ 107. This warranty apparently guaranteed that the iPhone's Wi-Fi and Bluetooth connection would perform as advertised, even after implementation of iOS 7. Id. Despite this description, Plaintiff's allegations do not establish the elements of an express warranty claim. To successfully do so, Plaintiff must "identify a 'specific and unequivocal written statement'" about the product that constitutes an 'explicit guarantee[].'" In re iPhone 4S Consumer Litig., 2014 U.S. Dist. LEXIS 19363, at *29 (quoting Maneely v. Gen. Motors Corp., 108 F.3d 1176, 1181 (9th Cir. 1997)). The court has explained above why the allegations are not sufficiently detailed to provide Apple with meaningful notice of which particular advertisements and webpages are at issue. Without more information, the exact terms of the purported warranty are not established with the requisite level of clarity. The claim for breach of express warranty will be dismissed with leave to amend.

### v. Misrepresentation Claims

The elements of intentional misrepresentation in California are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997). The elements of negligent misrepresentation are similar except that a plaintiff need not show that the defendant knew of the falsity of the statement, but rather that the defendant lacked reasonable ground for believing the statement to be true. Charney v. Cobert, 145 Cal. App. 4th 170, 184 (2006).

As noted, the elements of any species of misrepresentation claim require Plaintiff to show,

13
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

unsurprisingly, that Apple made some type of a misrepresentation to him. Here, Plaintiff has not done so with the level of specificity required by Rule 9(b). In particular, Plaintiff has not pled the actual content of the alleged misrepresentations made by Apple in their advertising and marketing, either with respect to Wi-Fi or Bluetooth connectivity, nor has he alleged facts sufficient to show that he relied justifiably relied on those misrepresentations. See Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003) (holding that reliance on "generalized, vague and unspecific assertions, constituting mere 'puffery'" is not reasonable). For these reasons, the misrepresentation claims will be dismissed with leave to amend.

### B. Motion to Strike

Apple has filed a separate motion to strike the class allegations asserted in the Complaint. Essentially, Apple seeks a pre-certification decision on the sufficiency of these allegations under Federal Rule of Civil Procedure 23. This motion has not been brought at the appropriate time.

Federal Rule of Civil Procedure 23(c) authorizes the court to issue a class certification decision "[a]t an early practicable time after a person sues or is sued as a class representative." But in general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification. Brown v. Hain Celestial Group, Inc., 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012); see also Thorpe v. Abbott Labs., Inc., 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). That is because a class certification decision usually involves considerations enmeshed in the factual and legal issues presented by the representative's claims. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982). Thus, a motion to strike class allegations should only be seriously considered when "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." Id.

Here, it is not "plain enough from the pleadings" whether or not the interests of the unnamed class member are encompassed in Plaintiff's claims, especially when it is anticipated that Plaintiff will file an amended complaint with additional allegations. Under these circumstances,

14

Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

1  the pleadings have not been settled to the point that it is appropriate or efficient to test the class

2  allegations. Moreover, the court does not believe it necessary to engage in a lengthy Rule 23

3  analysis now because it is unclear whether and in what form this case will ultimately proceed. The

4  analysis presented by Apple through this motion is better suited in response to a motion for class

5  certification, should one be filed in the future.

6  Because it is premature, Apple's Motions to Strike the Class Allegations will be denied.

## IV. ORDER

Based on the foregoing, Apple's Motion to Dismiss (Docket Item No. 14) is GRANTED. All claims in the Complaint are DISMISSED WITH LEAVE TO AMEND. Any amended complaint filed in response to this order must be filed on or before **April 8, 2015.**

Apple's Motion to Strike (Docket Item No. 15) is DENIED.

**IT IS SO ORDERED.**

Dated: March 23, 2015

_____
EDWARD J. DAVILA
United States District Judge