UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID YASTRAB, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:14-cv-01974-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 39 |

Steve Jobs described the iPhone 4 as "the biggest leap since the original iPhone." First Am. Compl. ("FAC"), Dkt. No. 38, at ¶ 52. But for Plaintiffs David Yastrab, John Keller, Daniel Arrellano, Penelope Shaw, Evelyn Cortez, Stanley Williams and Michael Robins (collectively, ("Plaintiffs"), their purchase of the later-released iPhone 4s constituted a leap into functional obsolescence. They allege in this putative class action that the Bluetooth and Wi-Fi capabilities of their iPhones were "grayed out," or rendered inoperable, after a software update, and contend that Defendant Apple Inc. ("Apple") falsely represented in statements they viewed prior to purchase that iPhones have these capabilities.

Apple now moves to dismiss all of the amended claims as implausible and lacking particularity. Dkt. No. 39. After carefully reviewing the parties' pleadings, the court concurs that Plaintiffs' claims are deficiently pled. Accordingly, Apple's motion to dismiss will be granted and the claims will be dismissed, this time without leave to amend.

## I.  BACKGROUND

Plaintiffs allege that "Apple manufactures, designs, produces and sells several types of electronic products," including the iPhone. FAC, at ¶ 51. Since the debut of the first iPhone model in 2007, Apple has released a new iPhone model every year, including the iPhone 4s in 2011. Id. at ¶ 2. Plaintiffs each purchased an iPhone 4s. Id. at ¶¶ 42-48.[1]

Plaintiffs allege that Apple marketed and sold each version of the iPhone as a "smartphone" that, like a computer, could run an operating system - in the case of Apple products, software called "iOS" - which allowed users to utilize all of the features of the product, including certain software applications known as "apps." Id. at ¶¶ 2, 3. To that end, Plaintiffs allege the iPhone had the "ability to connect to the internet via a Network or Wi-Fi connection . . . for users to have access" to apps and other features. Id. at ¶ 2.

According to Plaintiffs, "Apple has continuously released updates to iOS since the very first iPhone." Id. at ¶ 4. "Upon the release of a new version of iOS, users are prompted to download the newest iOS onto their device via a message from Apple." Id. In fact, Plaintiffs contend Apple encourages users to download an iOS update by "specifically stating" that the update "contains bug fixes and security updates." Id. at ¶ 7.

One update to the operating system, iOS 7, was unveiled on June 10, 2013, and made available for download on September 17, 2013. Id. at ¶¶ 20, 55. Plaintiffs allege that iOS 7 "was a platform for over a million mobile apps, iCloud,[2] and include[d] security features that prevent[ed] unauthorized access to Apple devices." Id. at ¶ 12. Plaintiffs each downloaded iOS 7 to their iPhones. Id. at ¶¶ 63, 72-79.

Plaintiffs allege, however, that their phones were "grayed out" after updating the software,

---

[1] Interestingly, while Plaintiffs allege the iPhone 4s did not actually debut until 2011, it is alleged that Plaintiff Arellano acquired his iPhone 4s in 2009. FAC, at ¶ 44.

[2] iCloud saves or backups data to the "cloud" and "allows users to access data stored on the cloud on any Apple device, regardless of the device the information was originally stored on." Id. at ¶ 17. Plaintiffs allege that iCloud cannot "backup data on a Network connection alone, and can only do so via a Wi-Fi connection." Id. at ¶ 18.

2
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

such that they "lost the ability to connect to Wi-Fi or Bluetooth and were no longer able to run Siri,[3] or other applications via a Wi-Fi connection, and could only download and run these applications using a Network connection, this using data from their cellular plan." Id. at ¶ 63. Plaintiff also allege they could not remedy the "grayed out" because they were unable to download iOS updates without a Wi-Fi connection, and were not permitted to downgrade to an earlier version of the operating software once iOS 7 was installed. Id. at ¶¶ 64, 94. Plaintiffs state that the lack of capabilities "essentially rendered the devices obsolete." Id. at ¶ 6. And because the "grayed out" issue was wide-ranging, Plaintiffs believe it "is reasonable and plausible to infer that [Apple] had either actual or constructive knowledge of the iPhones' shortcomings prior to their distribution." Id. at ¶ 99.

Plaintiff Yastrab initiated this case on April 29, 2014. The court granted Apple's ensuing motion to dismiss the complaint and dismissed all of Yastrab's claims on March 23, 2015. Plaintiffs filed the FAC on May 8, 2015, asserting amended claims for violation of (1) the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.; (2) the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq.; (3) breach of express warranty, (4) intentional misrepresentation, and (5) negligent misrepresentation. This second motion to dismiss followed.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only

---

[3] Siri is "speech recognition software that comes standard on every iPhone 4s and later." Id. at ¶ 13.

where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

Claims that sound in fraud are subject to a heightened pleading standard. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-1104 (9th Cir. 2003) (recognizing that claims "grounded in fraud" or which "sound in fraud" must meet the Rule 9(b) pleading standard, even if fraud is not an element of the claim). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). This requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz, 476 F.3d at 764. In other words, fraud or claims asserting fraudulent conduct must generally contain more specific facts than is necessary to support other causes of action.

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

Also, the court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

### III. DISCUSSION

Apple argues the re-pled claims for violation of the UCL, CLRA as well as those for intentional and negligent misrepresentation do not satisfy Rule 9(b)'s particularity requirement.

4

Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    Specifically, Apple contends that Plaintiffs have neither adequately identified an actionable

2    misrepresentation nor provided sufficient facts to plead reliance.  Apple also argues that, aside

3    from Rule 9(b), Plaintiffs have failed to state plausible claims as required by Rule 8(a).  These

4    arguments are discussed below.

    **A.    The Fraud-Based Claims**

6         The CLRA "provides a cause of action for 'unfair methods of competition and unfair or

7    deceptive acts or practices' in consumer sales." Berger v. Home Depot USA, Inc., 741 F.3d 1061,

8    1069 (9th Cir. 2014) (quoting Cal. Civ. Code § 1770(a)).  As relevant here, the CLRA prohibits a

9    person from "[r]epresenting that goods or services have sponsorship, approval, characteristics,

10   ingredients, uses, benefits, or quantities which they do not have," "[r]epresenting that goods or

11   services are of a particular standard, quality, or grade . . . if they are of another," "[a]dvertising

12   goods or services with intent not to sell them as advertised," and "[r]epresenting that the subject of

13   a transaction has been supplied in accordance with a previous representation when it has not."

14   Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9), (a)(16).  "Three elements are necessary to state a

15   claim under the CLRA: misrepresentation, reliance, and damages." Yastrab v. Apple Inc., No.

16   5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119, at *13, WL (N.D. Cal. Mar. 23, 2015) (citing

17   Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009)).

18        Similarly, the UCL "prohibits, and provides civil remedies for, unfair competition, which it

19   defines as 'any unlawful, unfair or fraudulent business act or practice.'" Kwikset Corp. v. Super.

20   Ct., 51 Cal. 4th 310, 320 (2011).  This can "include anything that can properly be called a business

21   practice and that at the same time is forbidden by law." Bank of the West v. Super. Ct., 2 Cal. 4th

22   1254, 1266 (1992) (internal quotations omitted).  "In addition, a practice that is unfair or

23   fraudulent may be the basis for a UCL action even if the conduct is 'not specifically proscribed by

24   some other law.'" Loeffler v. Target Corp., 58 Cal. 4th 1081, 1125 (2014) (quoting Cel-Tech

25   Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999)).

26        The elements of intentional misrepresentation in California are: (1) misrepresentation; (2)

27   knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5)

1    resulting damage.  Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997).  The
2    elements of negligent misrepresentation are similar except that a plaintiff need not show that the
3    defendant knew of the falsity of the statement, but rather that the defendant lacked reasonable
4    ground for believing the statement to be true.  Charnay v. Cobert, 145 Cal. App. 4th 170, 184
5    (2006).

6    As before, these claims are subject to the Rule 9(b) pleading standard because they are
7    grounded in fraud.  Yastrab, 2015 U.S. Dist. LEXIS 37119, at *11-12 (citing Kearns v. Ford
8    Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)).  Consequently, Plaintiffs' allegations "must
9    identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is
10   false or misleading about [the purportedly fraudulent] statement, and why it is false.'"  Cafasso v.
11   Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United
12   States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).  In addition, the allegations must satisfy
13   Rule 8(a) by stating a plausible claim.  Id.

### i. Particularity under Rule 9(b)

Plaintiffs recognize that in order to maintain any of their fraud-based claims, including claims under all three prongs of the UCL, they must sufficiently allege an actionable misrepresentation and reliance on that representation.  To that end, Plaintiff's clarify in their opposition to this motion that this case "is not, and has never been, about representations Apple made regarding its iOS software and or updates."  Plaintiffs explain further that they "do not claim that they saw, and relied on, advertisements that future iOS updates would not destroy" Wi-Fi or Bluetooth functionality.  Instead, Plaintiffs' focus is on "representations made by Apple that its iPhones have Bluetooth and Wi-Fi" on its website and in advertisements.

But if that is the case, Plaintiffs still have not described a misrepresentation in a manner that satisfies Rule 9(b).  The court previously found that Yastrab - who at the time was the sole plaintiff - had only made "unadorned references to Apple's advertising campaign and marketing materials," and did not describe "even one specific item" he viewed and where and when he viewed it.  Yastrab, 2015 U.S. Dist. LEXIS 37119, at *13-14.  Although Yastrab has remedied his

6

Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

own allegations in this regard by describing three statements made in 2012 on Apple's website, the court's previous observation still applies to each of the newly-named plaintiffs. Keller, Shaw and Williams allege they purchased an iPhone 4s based on "representations" about that iPhone's attributes that are unidentified in the FAC. FAC, at ¶¶ 74, 76, 78. Similarly, Arellano does not describe what "new features and smartphone capabilities" he saw when reviewing "TV commercials and the Apple website." Id. at ¶ 75. In addition, Cortez and Robins do not particularly describe how commercials featuring the Siri feature constitute some explicit representation about the iPhone's Wi-Fi or Bluetooth capabilities, and do not indicate when they saw these commercials. Id. at ¶¶ 77, 79. These unspecific references miss the mark. See Baltazar v. Apple, Inc., No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187, at *6, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ("At the least, Plaintiffs must identify the particular commercial or advertisement upon which they relied and must describe with the requisite specificity the content of that particular commercial or advertisement."); see also In re iPhone 4s Consumer Litig., No. C 12-1127 CW, 2014 U.S. Dist. LEXIS 19363, at *17-18, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ("Rule 9(b) therefore requires Plaintiffs to aver specifically the statements they relied upon in making their purchases, what is false or misleading about the statements, and why those statements turned out to be false."), aff'd, 2016 U.S. App. LEXIS 3373 (9th Cir. 2016).

Furthermore, paragraphs 71 through 79 of the FAC fail to particularly explain what is false or misleading about the statements Plaintiffs claim to have viewed before purchasing the iPhone 4s. Plaintiffs do not clarify why the term "smartphone" is a misdescription of the iPhone 4s, or why it was incorrect for Apple to advertise that the iPhone 4s had Bluetooth, Wi-Fi or other special features such as iCloud, FaceTime, and Siri. Indeed, Plaintiffs do not allege the iPhone 4s was not a "smartphone" - however that term is defined - or that their iPhones did not come with Wi-Fi or Bluetooth capabilities or other Apple features. In fact, the only possible inference that arises under these factual circumstances is that Plaintiffs' iPhones did have these functions when they purchased them, but that they stopped working, or were "grayed out," after iOS 7 was installed some months or years later.

Despite the shift of focus, Plaintiffs' theory is actually unchanged from the first iteration of the complaint. As before, Plaintiffs rely on general descriptions about the iPhone's attributes to support the contention that Wi-Fi and Bluetooth capabilities would always work despite changes or upgrades to the operating software. However, Plaintiffs have not identified any pre-purchase representations made by Apple about the consistency of these features, after software updates or otherwise. See McKinney v. Google, Inc., No. 5:10-CV-01177 EJD (PSG), 2011 U.S. Dist. LEXIS 97958, at *15, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) (dismissing fraud-based claims under Rule (b) because plaintiff failed to specify a representation "that the Nexus One would maintain consistent 3G connectivity"); see also In re iPhone 4S Consumer Litig., 2014 U.S. Dist. LEXIS 19363, at *20-21 ("Plaintiffs do not allege any specific statement by Apple that expressly indicates that Siri would be able to answer every question, or do so consistently."). Plaintiffs have only referenced and attached to the FAC a collection of material describing the capabilities of the iPhone at the time of purchase. This material does not say or imply anything about what the iPhone will or will not do if the software is changed in the future. That distinction is important because it crystalizes why Plaintiffs' misrepresentation and reliance allegations do not satisfy Rule 9(b). See Garcia v. Sony Computer Entm't Am., LLC, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. May 8, 2012) ("Garcia simply cannot maintain an action sounding in fraud based on Sony's supposed clairvoyance as to unspecified, future technological advancements in the field.").

To avoid dismissal under Rule 9(b), Plaintiffs argue the FAC meets the alternative reliance test provided in In re Tobacco II Cases, 46 Cal. 4th 298 (2009), as interpreted by this district in Opperman v. Path, Inc., 84 F. Supp. 3d 962 (N.D. Cal. 2015). In Tobacco II, the plaintiff alleged that several tobacco companies had engaged in a decades-long "public disinformation strategy . . . concerning the health effects of cigarette smoking," which was set forth "in specific detail" in the complaint. After defendants successfully moved to decertify the class, the California Supreme Court granted review, in part to examine the UCL's actual reliance requirement and how it could be adequately pled. On that issue, the Court held that "where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of

8
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

specificity that the plaintiff relied on particular advertisements or statements." 46 Cal. 4th at 328.

Citing that statement from Tobacco II, the Opperman court held that "[i]f a plaintiff sufficiently alleges exposure to a long-term advertising campaign as set forth in Tobacco II, she need not plead specific reliance on an individual representation." 84 F. Supp. 3d at 978 (Tigar, J.). The Opperman court described this conclusion as "opposite" to that of other cases (Id. at 977), including other cases from this district, all of which agree that Tobacco II "merely provides that to establish UCL standing, reliance need not be proved through exposure to particular advertisements; the case does not stand for, nor could it, a general relaxation of the pleading requirements under Rule 9(b)." Herrington v. Johnson & Johnson Consumer Cos., Inc., No. C 09-1597 CW, 2010 U.S. Dist. LEXIS 90505, at *27, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) (Wilken, J.); see, e.g., In re Actimmune Mktg. Litig., No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *26, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ("Although Tobacco II altered the pleading requirements for a UCL plaintiff seeking to represent a class of similarly situated individuals, it did not relieve class representatives from the burden of satisfying Rule 9(b) when their allegations 'sound in fraud.'") (Patel, J.); Garcia, 859 F. Supp. 2d at 1063 ("Although Tobacco II purportedly alters the pleading standard to show standing under [the UCL], in federal court, it does not excuse a plaintiff prosecuting claims which 'sound in fraud' from their obligation to satisfy Rule 9(b).") (Seeborg, J.).

This court accepts that under appropriate factual circumstances, such as those presented by Tobacco II, a representative consumer plaintiff may not be able to pinpoint the exact portion of a long-standing, widespread advertising campaign he or she relied on when purchasing a product. But the state high court's holding in Tobacco II does not, and indeed could not, supplant a federal plaintiff's obligation to describe that campaign with the particularity prescribed by Rule 9(b), which description must include what is false or misleading about the advertising and why it is false. Cafasso, 637 F.3d at 1055 (9th Cir. 2011). Even under Tobacco II, "[i]t cannot be . . . that it is enough under Rule 9(b) to nebulously reference a product's advertising package and just declare the campaign misleading." Yastrab, 2015 U.S. Dist. LEXIS 37119, at *14. Notably, the

9
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

misleading advertising was described in specific detail in Tobacco II. 46 Cal. 4th at 308. As such, the court disagrees with Opperman to the extent it holds that a federal plaintiff is completely excused from complying with Rule 9(b) when pleading a long-term advertising campaign. For the purposes of federal pleading standards, Tobacco II teaches only that once the details of the campaign are particularly pled, individual reliance on the specific statements need not be. That said, neither Tobacco II nor Opperman assist Plaintiffs here because they have not particularly explained what was false about Apple's marketing materials and why such materials were false.

Since Plaintiff have not satisfied their pleading obligation under Rule 9(b), the fraud-based claims will be dismissed.

### ii. Plausibility under Rule 8(a)

Aside from its argument under Rule 9(b), Apple also argues that the CLRA, UCL and misrepresentation claims are not plausible. The court agrees.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The Ninth Circuit employs a two-step process for evaluating a pleading for plausibility:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014).

"In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'" Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting Eclectic Props., 751 F.3d at 995-96).

Plaintiffs' fraud-based claims fail under the second step of the Ninth Circuit's plausibility standard. As described in the preceding section, Plaintiffs have not identified a misrepresentation

10
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

within Apple's advertising campaign that supports their refocused theory.  Again, Plaintiffs do not provide facts to establish that the iPhone 4s was not a "smartphone" without Bluetooth and Wi-Fi capabilities and have not pointed out any pre-purchase statements about continued functionality after software updates released months or years later.  And although they now have divorced their claims from these statements, any subsequent representations about iOS 7, even those asserting compatibility with the iPhone 4s, are not actionable in this case because Plaintiffs could not have actually relied on those statements when they decided to purchase their mobile devices.  See Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012).

Furthermore, Plaintiffs do not allege with anything more than conclusions that Apple knew at the time it made the accused statements that a software update released months after purchase would render the iPhone's Bluetooth and Wi-Fi capabilities inoperable and the phone "obselete," or that Apple had reason to believe the software update would negatively affect these functions.  Under their theory of the case, each of the fraud-based claims requires plausible allegations establishing a basis for Apple's knowledge of future events, in one form or another.  Without those facts, they have not stated a claim under the CLRA, UCL or for either form of misrepresentation.  See Kowalsky v. Hewlett-Packard Co., 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) (providing that a representation will not violate the CLRA or the fraudulent prong of the UCL "if the defendant did not know, or have reason to know, of the facts that rendered the representation misleading at the time it was made"); see also Engalla, 15 Cal. 4th at 974 (providing that knowledge of falsity is an element of intentional misrepresentation); see also Fox v. Pollack, 181 Cal. App. 3d 954, 962 (providing that a defendant must have acted without reasonable grounds for believing a statement to be true to be liable for negligent misrepresentation).

### B.   WARRANTY

For a breach of express warranty claim, "a plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact or promise' [which relates to the goods] or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was

11
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  breached." Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010) (quoting Keith

2  v. Buchanan, 173 Cal. App. 3d 13, 20 (1985)).

3        The court previously dismissed this claim because the allegations were insufficient to

4  establish the contours of a warranty with the requisite level of clarity. The amended allegations

5  fare no better. Though Plaintiffs appear to argue something different in their opposition, what

6  they actually allege in the FAC is that they "formed a contract" with Apple which includes

7  "promises and affirmations of fact" that the iPhone's "Wi-Fi and Bluetooth connection performs

8  as advertised, even after updating the latest iOS." FAC, at ¶ 131. But for reasons already

9  explained, Plaintiffs have not identified "a 'specific and unequivocal written statement'"

10  constituting an explicit guarantee that functionality would not be affected by future software

11  updates. See In re iPhone 4S Consumer Litig., 2014 U.S. Dist. LEXIS 19363, at *29 (quoting

12  Maneely v. Gen. Motors Corp., 108 F.3d 1176, 1181 (9th Cir. 1997)). For that reason, they have

13  again failed to state a claim for breach of express warranty.

14      **C.   Leave to Amend**

15        The court must now determine whether Plaintiffs should be permitted leave to amend.

16  Leave to amend is generally granted with liberality. Fed. R. Civ. P. 15(a)(2) ("The court should

17  freely give leave when justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d

18  1074, 1079 (9th Cir. 1990). Leave need not be granted, however, where the amendment of the

19  complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an

20  exercise in futility, or creates undue delay. Foman v. Davis, 371 U.S. 178, 182 (1962); Janicki

21  Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994). Leave to amend may also be denied for

22  "failure to cure deficiencies by amendments previously allowed." Leadsinger, Inc. v. BMG Music

23  Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

24        Here, Plaintiffs failed to remedy the deficiencies identified by the court in the prior order

25  dismissing these same claims. The allegations still do not satisfy Rule 9(b)'s heightened pleading

26  standard and fail to establish a plausible claim in any event. The court therefore concludes that

27  permitting further amendment would be futile and will dismiss the claims without leave to amend.

28

12
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

## IV. ORDER

Apple's motion to dismiss is GRANTED. All claims in the FAC are DISMISSED WITHOUT LEAVE TO AMEND. Judgment will be entered in favor of Apple and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: March 25, 2016



EDWARD J. DAVILA
United States District Judge

13
Case No.: 5:14-cv-01974-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS